**EARLY SETTLERS INSURANCE CO., Assignee of Charles L. Jordan, III,**

v.

**SELECTED RISKS INSURANCE COMPANY.**

**Civ. A. No. 59–70–R.**

United States District Court, E. D. Virginia, Richmond Division.

Aug. 24, 1972.

MEMORANDUM

MERHIGE, District Judge.

This diversity action is brought by assignee of plaintiff Jordan, a citizen of the State of Virginia, against defendant, a New Jersey corporation.

The dispute involves an amount in excess of Ten Thousand Dollars exclusive of interest and costs. Jurisdiction is attained by virtue of 28 U.S.C. § 1332.

The facts have been stipulated by the parties and are as follows; insofar as they are material to the instant issues:

1. On or about September 13, 1966, the defendant issued its policy numbered MP2154, a copy of which is attached hereto, to Smith Motor Court, Inc., t/a Holiday Inn Motel, U. S. Route 301, Edgehill, Virginia, insuring three buildings owned by the named insured in the total amount of $34,000.00, with first mortgagees being listed on the policy as Charles L. Jordan, IV, and Thomas D. Jordan, Trustees, c/o Central National Bank, 219 East Broad Street, Richmond, Virginia.

2. On or about November 15, 1968, the named insured, Smith Motor Court, Inc., t/a Holiday Inn Motel, sold all its right, title and interest in the insured property to Barnou Corporation, t/a Holiday Inn Motel.

3. On or about the 18th day of November, 1968, Early Settlers Insurance Company issued its policy of insurance numbered SM83210 for a policy period of November 15, 1968, to November 19, 1971, to Barnou Corporation, t/a Holiday Inn, RFD 1, Box 85, King George, Virginia, and insuring the same property for a total value of $35,000.00, a copy of this policy is attached hereto. The first mortgagees listed on this policy were Charles L. Jordan, IV, and Thomas D. Jordan, Trustees for Charles L. and Lucille Jordan, III.

Joseph C. Russell, Richmond, Va., for plaintiff.

Frank B. Miller, III, Sands, Anderson, Marks & Clarke, Richmond, Va., for defendant.

4. Prior to January 9, 1969, Joseph L. Smith, one of the principal stockholders in Smith Motor Court, Inc., requested cancellation of the policy issued by this defendant to W. L. Schulteis of

Schmidt & Wilson, Inc., the agent of this defendant.

5. Prior to January 9, 1969, Mr. Schulteis requested of Charles L. Jordan, IV, loss payee under the policy, that the original of the policy in question be returned to him in order that he might request cancellation from the company and Mr. Jordan refused to surrender said policy.

6. On or about January 9, 1969, the agent of the defendant, Walter L. Schulteis, requested of Barnou Corporation and its stockholders that they secure the issuance of a new policy on the premises in question to the Trustee in order that the Trustee might surrender the policy issued by the defendant, or request a transfer of ownership of the policy issued by the defendant.

7. On or about January 15, 1969, the property purportedly insured under both policies sustained a loss by fire, a stated peril under each of the policies in question.

8. As of January 16, 1969, the loss payees in the policy issued by Early Settlers Insurance Company had not received a copy of the policy issued by Early Settlers Insurance Company to Barnou Corporation, although the Early Settlers Insurance Company contends that it mailed a copy of said policy to them.

9. On or about February 5, 1969, the Early Settlers Insurance Company issued an additional policy bearing the same policy number which superseded the policy of December 18, 1968, and contained only a minor change with reference to the rating on building number 2.

10. On or about the 6th day of February, 1969, the loss payees received a copy of the revised policy of Early Settlers Insurance Company bearing counter-signature date of February 5, 1969.

11. Prior to February 10, 1969, the agent of the defendant received its policy from the named insured and requested cancellation from the defendant, at the request of the named insured as of November 15, 1968.

12. On or about February 10, 1969, the defendant refunded to its named insured the unearned premium on said policy effective November 15, 1968, and claimed, and still claims, said policy was cancelled effective November 15, 1968.

13. On or about March 27, 1969, the Early Settlers Insurance Company received a proof of loss duly executed by its named insured and issued its draft in payment of the loss payable to the order of the named insured and to the loss payees named on its policy for damages sustained by one of the buildings in the amount of $14,090.00, for which it received a receipt for payment in the amount of $14,090.00 in full satisfaction and indemnity for all claims and demands upon said company on account of said loss and damage.

14. On or about November 3, 1969, Charles L. Jordan, III, executed an assignment of all right, title and interest he might have in a certain policy issued by the defendant which is the subject of this litigation to Early Settlers Insurance Company; however, through inadvertence and stenographic error, Virginia Farm Bureau Mutual Insurance Company was shown as assignee rather than Early Settlers Insurance Company, which is a wholly owned subsidiary of Virginia Farm Bureau Mutual Insurance Company. By subsequent agreement dated October 7, 1970, the assignment dated November 3, 1969, was reformed to read in accordance with the original intention of the parties to said assignment.

15. That prior and subsequent to January 15, 1969, Charles L. Jordan, III, was the sole payee of a certain promissory note held by Central National Bank for collection only, secured by deed of trust on the property insured by the policies which are the subject of this litigation. That Charles L. Jordan, IV, and Thomas D. Jordan are the Trustees named in said deed of trust.

16. On or about November 3, 1969, Charles L. Jordan, III, executed a proof of loss which was forwarded to the defendant making a claim under the policy which is the subject of this litigation in the amount of $8,247.00.

17. This proof of loss was returned by the defendant to counsel for the plaintiff accompanied by a letter dated November 14, 1969, written by Walter S. Smith, Assistant Vice-President of defendant.

18. Defendant has never received any proof of loss within the time required by law from its named insured Smith Motor Court, t/a Holiday Inn Motel, or the loss payees named in its policy, Charles L. Jordan, IV, and Thomas D. Jordan, Trustees.

20. That the amount of the mortgage held by Charles L. Jordan, III, did at the time of the loss exceed coverage of defendant's policy.

21. That no notice of cancellation was ever received by the mortgagee, nor was one mailed by the defendant.

22. That on or about the 8th day of February, 1969, said mortgagee surrendered his policy to defendant's agent and subsequently defendant dated the cancellation as of November 15, 1968.

23. That the total loss by fire to the building insured by both policies was $14,015.00.

26. That the defendant denies any liability to the mortgagee as a result of said loss.

By letter of September 7, 1971, the parties additionally stipulated:

1. That the forms upon which the policies were written were approved by the State Corporation Commission.

2. That the reason for the delay of the mortgagee in surrendering the policy issued by defendant was the delay of plaintiff in issuing and forwarding its policy to the mortgagee.

3. That defendant did not attempt cancellation by statutory means.

This Court is presented at the outset with three issues, the resolution of which is dispositive of the action. They are as follows:

I. Did Jordan, the Mortgagee, have an insurable interest under the first (Smith Motor Court) policy?

II. Was the first policy effectively cancelled as to Jordan before the fire?

III. If effective, was defendant's insurance excess insurance?

#### I.

█ Jordan, as mortgagee of the insured property, had an insurable interest. The law is well-settled that a mortgagee has a distinct insurable interest, 4 Appleman Ins. Law and Practice, § 2186, and was clearly within the contemplation of the parties under the first insurance policy. See Provision of Selected Risks Policy, infra.

#### II.

The Court finds that the defendant's policy was not effectively cancelled before the fire as to plaintiff's assignor, Jordan.

The terms of the Selected Risks policy respecting the rights of the mortgagee are set forth below in pertinent part:

F. Mortgage Clause: Applicable to buildings only (this entire clause is void unless name of Mortgagee(s) [Jordan], (or trustee(s) ) is inserted in the Declarations): *Loss, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy*, as interest may appear under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of said mortgages, *and this Insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property* [Smith's Motor Court], nor by any foreclosure or other proceedings or notice of sale relating to the property, *nor by any change in the title or own-*

*ership* of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided that in the case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same. Provided also, that the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void.

This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement. (Emphasis supplied.)

■ Under the above-quoted contract, acts of the mortgagor or owner of the property (Smith's Motor Court), or a change in title ownership, cannot by themselves invalidate the insurance as to the mortgagee (Jordan). Pursuant to the contract the insurer may, however, cancel the policy as to the mortgagee by supplying proper notice of cancellation. The defendant has stipulated, however, that no such notice of cancellation was ever sent to Jordan. Nor, as also stipulated by defendant insurer, did it attempt cancellation of the policy by statutory means. Failure of the defendant to adhere to the terms of the contract in seeking to cancel or to pursue statutory cancellation is fatal to its efforts to do so. The law is well-settled that an insurer must comply with policy cancellation provisions:

Since [an insurer's] right of cancellation existed solely by reason of the cancellation provision in the insurance contract, it would seem obvious that strict compliance with this provision was necessary. Columbia Cas. Co. v. Wright, 235 F.2d 462 (4th Cir. 1956). See also, State Farm Mut. Auto Ins. Co. v. Pederson, 185 Va. 941, 41 S.E. 2d 64 (1947).

Accordingly, the Court finds that first, Jordan's rights under the policy could not be and were not defeated by the attempted cancellation by Smith Motor Court, and second, that defendant insurer failed to effectively cancel this policy as to Jordan.

### III.

■■ The Court finds that defendant's policy was excess insurance of Jordan's interest.

Defendant's policy provides, with regard to "other insurance" as follows:

### F. OTHER INSURANCE:

1. loss by fire or other perils not provided for in 2. below: If at the time of the loss, there is other insurance available to the insured or any other interested party covering such loss or which would have covered such loss except for the existence of this insurance, then the Company shall be liable as follows:

a. If such insurance is Contributing Insurance, defined as any insurance written in *the name of the insured, upon the same plan, terms and conditions and provisions as contained in this policy whether collectible or not*, the Company shall be liable for no greater proportion of any loss than the limit of liability under this policy bears to the whole amount of insurance covering such property.

b. If such insurance is Specific Insurance, defined as any insurance other than that described as Contributing Insurance in a. above, the Company shall not be liable for any

loss hereunder *until the liability of such specific insurance has been exhausted,* and then shallt cover only such amount as may exceed the amount due from such Specific Insurance (whether collectible or not) after application of any contribution, coinsurance, average on distribution or other clauses contained in the policies of such Specific Insurance affecting the amount collectible thereunder, not exceeding however, the applicable limit of liability under this policy. (Emphasis supplied.)

Defendant contends that the terms of the second policy are different from the first, as to amount of coverage, name of primary insured, and ownership of insured property. These differences, so it asserts, warrant treatment of plaintiff's policy as Specific Insurance under the above-quoted provisions.

Defendant's analysis appears correct. Although Jordan is named as mortgagee in both policies, the primary insured's amount and dates of insurance are different on the two policies. Although Jordan's insurable interest is common to both policies, the terms do differ. Under the provisions of defendant's policy, these differences categorize plaintiff's policy as Specific Insurance. As such, defendant is liable only on excess over, of which none exists herein.

To this Court's knowledge, Virginia courts have not ruled on the legality of specific insurance provisions. In construing how Virginia courts would rule on said provisions, as is the duty of this Court to do, the Court is guided by the general rule of other District and Circuit Court holdings to the effect that where two policies afford coverage on a particular loss, and one contains a pro rata clause as to other insurance and the other policy contains an excess clause, the policy containing the excess clause does not provide any coverage until the other policy is exhausted. See, e. g., Fireman's Fund Ins. Co. v. Underwrit-

ers' Ins. Co., 389 F.2d 767 (10th Cir. 1968).

Accordingly, the Court finds that defendant's policy was excess insurance. As no excess exists herein, judgment will be rendered for defendant.