### FIREMAN'S FUND INSURANCE COMPANY

v.

### APPALACHIAN INSURANCE COMPANY.

Civ. A. No. 82–5303.

United States District Court, E.D. Pennsylvania.

Oct. 7, 1983.

David Strawbridge, Philadelphia, Pa., for plaintiff.

Thomas Brown, Andrew Hecker, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

This insurance suit requires the Court to resolve a question of whether one or two policies of insurance was in effect at the time the insured property was damaged by fire. The plaintiff and defendant insurance companies have submitted cross motions for summary judgment in conjunction with a mutually agreed upon statement of the case. For the reasons set forth below, defendant's motion will be granted and plaintiff's motion will be denied.

### I. Facts

The subject of this suit is certain real property located in Elkton, Maryland, referred to by the parties as the "Deer Dale Property." In October of 1977, this property was conveyed to Jay Brinsfield, Leonard Lockhart and Lowell McCoy, who had secured a $415,000.00 mortgage for the purchase with The Independence National Bank of Gastonia, North Carolina ("Bank" or "Mortgagee"). Upon purchase, the Deer Dale Property was leased to Akers Motor Lines, Inc. ("Akers"), the company which had been the tenant of the prior owner. The lease was for a five year term, beginning on October 1, 1977. Section 13 of the lease required Akers, as lessee, to carry fire insurance on the premises in the amount of $400,000.00. Pursuant to this provision, Akers procured insurance for the Deer Dale Property with defendant, Appalachian Insurance Company ("Appalachian"). The Bank was named as loss payee in its capacity as mortgagee, and a copy of the policy as well as a certificate of insurance was sent to the Bank by Appalachian in July of 1978. On September 15, 1978, the Deer Dale Property was deleted from the Appalachian policy at Akers' request.[1] The cancellation was effective August 1, 1978. No premium payments were received by Appalachian from Akers for coverage of the Deer Dale Property after August 11, 1978. On September

28, 1979, other insured locations on the Appalachian policy were also deleted at Akers' direction. This resulted in complete cancellation of the policy. On October 5, 1979, the insured, Akers, returned the policy to Appalachian as requested and the cancellation became effective October 15, 1979. A return premium of $448.00 was paid by Appalachian to Akers on October 23, 1979. No written or oral notice of cancellation of the policy or written or oral notice of deletion of the Deer Dale Property from the Appalachian policy was sent to or received by the Mortgagee, Independence National Bank. The Bank was never requested to, nor did it, return the Appalachian policy to Appalachian.

On February 27, 1979, Lowell McCoy added the Deer Dale Property to an insurance policy issued by plaintiff, Fireman's Fund Insurance Company ("Fireman's Fund"), to McCoy Lincoln-Mercury, Inc., of which Lowell McCoy was president. The coverage amount was set at $475,000.00 (building) and $50,000.00 (contents). An annual premium was charged and received by Fireman's Fund for the insurance provided by its policy covering the Deer Dale Motel. The premium charged did not reflect the possible existence of other similar insurance coverage on the Deer Dale Property.

On September 7, 1979, a certificate of insurance was issued by Fireman's Fund and received by Mortgagee, Independence National Bank, certifying the existence of a Fireman's Fund policy providing coverage for the Deer Dale Property. The Bank did not, at any time prior to receiving the certificate from Fireman's Fund, request that additional insurance coverage be procured to protect the Bank's interest in the Deer Dale Property. The amount of coverage provided by Fireman's Fund exceeded the Bank's interest in the property.

On December 13, 1979, a fire loss occurred at the Deer Dale Property. The Fireman's Fund policy was never cancelled

---

**1.** Although the connection is not clear from the record, Akers' deletion of the Deer Dale Property from the Appalachian policy was probably related to whatever disagreements between it and the lessors, Brinsfield, Lockhart and McCoy, which led to the lessors filing suit for breach of lease in December of 1978.

prior to this date and Fireman's Fund admits that its policy was in effect at the time of the loss. On April 7, 1980, sworn statements in proof of loss were submitted to Fireman's Fund by Brinsfield, Lockhart and McCoy, requesting payment in the amount of $239,000.00. On March 6, 1980, Independence National Bank advised both Appalachian and Fireman's Fund of its interest in the Deer Dale Property. On March 20, 1980, Appalachian advised the Bank that the Deer Dale Property had been deleted from the Appalachian policy on August 1, 1978, and that the policy had been cancelled on October 15, 1979. Nonetheless, on June 6, 1980, the Bank submitted a sworn statement in proof of loss to Appalachian. On July 16, 1980, the Bank submitted a sworn statement in proof of loss to Fireman's Fund. Thereafter, on September 30, 1980, Fireman's Fund paid the Bank $200,000.00 as a result of the fire of December 13, 1979. Upon receipt of payment from Fireman's Fund, the Bank executed a release and subrogation receipt which provided that:

> ... The Independence National Bank, Gastonia, N.C., as mortgagee, do[es] hereby assign and subrogate the American Automobile Insurance Company [Fireman's Fund] to all of the rights, claims and interest which the insured may have against any person, corporation or association liable for the loss mentioned above....

The Bank took no further action against Appalachian as a result of the fire.

After paying out on the fire loss, Fireman's Fund contacted Appalachian and demanded $106,000.00 from Appalachian claiming that this amount represented a pro rata share of the $200,000.00 Fireman's Fund paid to the Bank. Fireman's Fund based its demand on the fact that Appalachian failed to notify the Bank that the Appalachian policy was cancelled. Fireman's Fund argues that because of this omission, the Appalachian policy was in full force and effect as to the Bank at the time of the fire.

## II. *Discussion*

■ The Appalachian insurance policy issued to Akers included the following language in its mortgage clause:

> This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for 10 days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

Such a clause, known as a New York standard mortgagee clause, gives to the mortgagee an independent status as might authorize a recovery by him on the policy even though the circumstances of the situation would prevent a recovery by the mortgagor. *Aetna State Bank v. Maryland Cas. Co.,* 345 F.Supp. 903 (N.D.Ill.1972); *Early Settlers Ins. Co. v. Selected Risks Ins. Co.,* 346 F.Supp. 1272 (E.D.Va.1972). *See also* 6A Appleman, *Insurance Law and Practice* §§ 4164, 4229 (1972); 17 *Couch on Insurance* 2d § 67:94 (1967). Under this general rule, the unilateral act of either the insured or the insurer in requesting cancellation of an insurance policy containing a New York standard mortgage clause without written notice to the mortgagee cannot effect cancellation of the policy as to the mortgagee. The standard mortgage clause makes notice to the mortgagee a prerequisite to cancellation. *Aetna State Bank v. Maryland Casualty Co., supra,* 345 F.Supp. at 905–906; *Early Settlers Ins. Co. v. Selected Risks Ins. Co., supra,* 346 F.Supp. at 1276. The purpose of the standard mortgage clause is to protect the interests of the named mortgagee and to assure that the mortgagor or insurer shall not defeat the insurance interests of the mortgagee. *Couch on Insurance* 2d, *supra* at §§ 42:682, 42:684.

■ Here, Appalachian has admitted that no notice of cancellation was ever sent to the Bank as mortgagee. Appalachian also concedes that if the Fireman's Fund policy had not been applicable to the loss, the general rule would hold Appalachian liable to the Mortgagee in a direct action by

the Mortgagee. Given the existence of the Fireman's Fund policy, however, Appalachian argues that its obligation to the Mortgagee was cancelled as of the date Fireman's Fund assumed coverage, and therefore Fireman's Fund is not entitled to seek contribution from Appalachian for the loss claimed by the Mortgagee. The Court agrees.

The New York standard mortgage clause has been interpreted to operate as an independent contract of insurance between the insurer and the mortgagee. *Rubenstein v. Cosmopolitan Mut. Ins. Co.*, 403 N.Y.S.2d 96, 61 A.D.2d 1029 (1978); *Fancher v. Carson-Campbell, Inc.*, 216 Kan. 141, 530 P.2d 1225 (1975); *Hartford Fire Ins. Co. v. Associates Capital Corp.*, 313 So.2d 404 (Miss. 1975); *Waynesville Sec. Bank v. Stuyvesant Ins. Co.*, 499 S.W.2d 218 (Mo.App.1973); *Travelers Indemnity Co. v. Storecraft, Inc.*, 491 S.W.2d 745 (Tex.Civ.App.1973). In actuality, however, what has been termed an "independent contract" is more accurately characterized as a right of estoppel which the mortgagee holds against the insurer so that the mortgagee is not subject to forfeiture because of any act or omission of the insured, unknown to the mortgagee. Existing case law reveals that this estoppel right exists only for the benefit of the mortgagee. The Court has not been presented with any authority which would allow a party other than the one intended to be benefited from the mortgage clause to assert a claim against an insurer for failure to notify the Mortgagee as required by the standard mortgage clause. *Cf. Fancher v. Carson-Campbell, supra,* 530 P.2d at 1228 (allowing claim based on standard mortgage clause to be asserted by individuals who were intended beneficiaries of mortgagee's position as it related to this clause).

In the present case, Fireman's Fund is attempting to pick up the estoppel rights which the Bank would have had against Appalachian. This it cannot do. In selling its policy covering the Deer Dale Property and accepting a premium therefore, Fireman's Fund extinguished the Bank's rights against Appalachian. Appalachian was thus the unintended third party beneficiary

of the contract between Fireman's Fund and McCoy Lincoln-Mercury. The Court notes that Fireman's Fund did not rely on the existence of the Appalachian policy since its premium rate was not adjusted to reflect the presence of other similar insurance coverage on the Deer Dale Property. Having received a full premium, Fireman's Fund got everything it bargained for and the present holding does not deprive it of any real right. The inability of Fireman's Fund to capitalize on a possible windfall offers no occasion for this Court to afford it relief. Accordingly, judgment will be entered in favor of Appalachian and against Fireman's Fund.

An appropriate Order will be entered.

### ORDER

AND NOW, TO WIT, this 7th day of October, 1983, for the reasons stated in the foregoing Memorandum, IT IS ORDERED as follows:

1. The motion of plaintiff Fireman's Fund Insurance Company for summary judgment is *denied.*

2. The motion of defendant Appalachian Insurance Company for summary judgment is *granted.*

3. Judgment is *entered* in favor of defendant Appalachian Insurance Company and against plaintiff Fireman's Fund Insurance Company.