677 So.2d 266 (1996)
FIDELITY AND DEPOSIT COMPANY OF MARYLAND, etc., Petitioner,
v.
FIRST STATE INSURANCE COMPANY, Respondent.
No. 84791.
Supreme Court of Florida.
June 20, 1996.
Rehearing Denied July 29, 1996.
*267 Howard Pomerantz of Abramowitz & Pomerantz, P.A., Sunrise, and Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for Petitioner.
Paul B. Butler, Jr. and William R. Lewis of Butler, Burnette & Pappas, Tampa, for Respondent.
SHAW, Justice.
This is a petition to review First State Insurance Co. v. Fidelity & Deposit Co., 643 So.2d 6 (Fla. 4th DCA 1994), in which the district court held that a mortgagee's receipt of actual (oral) notice of cancellation of a fire insurance policy was sufficient to fulfill the insurer's contractual duty to provide the mortgagee with written notice of cancellation. The district court certified the following question as being of great public importance:
MAY A MORTGAGEE WHO RECEIVES ACTUAL NOTICE OF THE CANCELLATION OF A POLICY OF INSURANCE ON THE MORTGAGED PROPERTY BE ESTOPPED FROM RELYING ON THE STATUTORY AND CONTRACTUAL PROVISIONS REQUIRING WRITTEN NOTICE?
Id. at 8. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the negative and quash the decision of the district court of appeal.
The Fountainbleau Racquet Club purchased a fire insurance policy from First State Insurance Company for the period between March 31, 1987, and March 31, 1988, naming Commonwealth Savings and Loan Association as mortgagee. Fountainbleau contracted with Tifco, Inc., a premium finance company, to pay its premiums and granted Tifco a power of attorney which authorized it to cancel the policy for nonpayment of premiums. When Fountainbleau failed to pay its premium, Tifco cancelled the policy effective September 23, 1987. Tifco's notice of cancellation stated in pertinent part:
You are hereby notified that the policy described above is cancelled for non-payment of an installment in accordance with the conditions and terms of the Premium Finance Agreement which incorporates a power of attorney.
On May 1, 1988, Fountainbleau was damaged by fire, and Commonwealth, claiming it had never received written notice of cancellation, demanded insurance proceeds pursuant to the mortgage clause under the First State policy. First State denied the claim, asserting that according to its records it had given Commonwealth written notice of cancellation, but even if it had not given written notice, Commonwealth received actual notice prior to the fire.[1]
Upon First State's refusal to pay, Commonwealth sought recovery under its errors and omissions policy with Fidelity and Deposit Company of Maryland. The claim admitted that Commonwealth's employees neglected to secure fire insurance on the mortgaged property after they learned that First State had cancelled its coverage. Fidelity paid Commonwealth $591,411.79 in return for Commonwealth's assigning to Fidelity Commonwealth's right to recover under its policy with First State. In Fidelity's action against First State to recoup the amount it had paid Commonwealth, the trial court granted summary judgment in favor of Fidelity based upon First State's failure to provide written notice of cancellation. On appeal, the Fourth District reversed, ordered summary judgment in favor of First State, and certified the foregoing question to this Court.
First State argues that because Fountainbleau cancelled the policy through Tifco, it *268 was required neither by statute nor by the policy terms to give notice to the mortgagee. We disagree. Section 627.848, Florida Statutes (1987), provides in pertinent part:
Cancellation of insurance contract upon default.When a premium finance agreement contains a power of attorney or other authority enabling the premium finance company to cancel any insurance contract listed in the agreement, the insurance contract shall not be canceled unless cancellation is in accordance with the following provisions:
. . . .
(5) All statutory, regulatory, and contractual restrictions providing that the insured may not cancel his insurance contract unless he or the insurer first satisfies such restrictions by giving a prescribed notice to a governmental agency, the insurance carrier, a mortgagee, an individual, or a person designated to receive such notice for such governmental agency, insurance carrier, or individual shall apply when cancellation is effected under the provisions of this section. The insurer, in accordance with such prescribed notice when it is required to give such notice in behalf of itself or the insured, shall give notice to such governmental agency, person, mortgagee, or individual; and it shall determine and calculate the effective date of cancellation from the day it receives the copy of the notice of cancellation from the premium finance company.
When a premium finance agreement contains a power of attorney enabling the company to cancel any insurance listed in the agreement, subsection (5) protects a mortgagee by requiring notice to the mortgagee as described by statute, regulation, or contract. Failure to give the prescribed notice nullifies the attempted cancellation by the premium finance company. When Tifco cancelled the contract on Fountainbleau's behalf, First State was contractually required to notify the mortgagee by virtue of the insurance policy's standard mortgage clause which stated in pertinent part:
2. Mortgage Holders
. . . .
b. We will pay for covered loss or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.
. . . .
d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:
(1) Pays any premium due under this Coverage Part at our request if you have failed to do so;
(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and
(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.
. . . .
f. If we cancel this policy, we will give written notice to the mortgage holder at least:
(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or
(2) 30 days before the effective date of cancellation if we cancel for any other reason.
g. If we do not renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.
This mortgage clause operated as an independent contract of insurance between First State and Commonwealth and made notice to the mortgagee a prerequisite to cancellation when the insured cancelled the policy. Fireman's Fund Ins. Co. v. Appalachian Ins. Co., 572 F.Supp. 799, 801 (E.D.Pa.1983), aff'd, 738 F.2d 422 (3d Cir.1984). Because notice was required under the contract, notice was also required under the statute.
Our reading of the statute and mortgage clause is buttressed by a letter First State sent to Commonwealth recognizing its obligation to fulfill the notice requirement. The letter stated in pertinent part:

*269 We cancelled effective October 14th in lieu of September 23 so that we could notify the mortgagees on our policy.
Having determined that Commonwealth was entitled to notice, the key issue is whether written notice was essential or whether oral notice would suffice. The Fourth District stated that "the mortgagee had actual notice of cancellation well in advance of the loss.... While the policy requires ten days notice, the mortgagee here had some seventy-nine (79) days within which to act prior to the fire." First State, 643 So.2d at 8. The district court relied on its decision in Frazier v. Standard Guaranty Insurance Co., 382 So.2d 392 (Fla. 4th DCA 1980), wherein the court held that actual notice was sufficient where an insurer mailed a cancellation notice which was received by the insured even though the insured's mailing address was not as it appeared in the policy. The insured argued that cancellation could not be effective without strict compliance with the statute requiring proof of mailing to "the address shown in the policy." Id. at 394. In finding that actual notice met the statutory requirement, the Frazier court stated that its holding "is consistent with the underlying purpose of cancellation, which is to enable the insured to obtain other insurance `before he is subject to risk without protection.'" Id. at 395 (quoting Cat `N Fiddle, Inc. v. Century Ins. Co., 213 So.2d 701 (Fla.1968)).
The district court also relied on Cat `N Fiddle, which focused on the scope of an insurance broker's authority where an insurer directed notice of cancellation to the insurance broker instead of the insured as required by the insurance policy. The Court concluded that the degree of authority conferred on the broker controlled whether he had sufficient authority to accept the cancellation notice and remanded the case for the trial court's determination of that measurement. 213 So.2d at 707.
The district court's reliance on the rationales of Frazier and Cat `N Fiddle is misplaced because neither case answers the certified question. The Frazier court addressed the issue of compliance with the proof of mailing statute, and the Cat `N Fiddle court addressed the scope of an insurance broker's authority to accept cancellation notice on behalf of an insured. Neither case focused on the sufficiency of oral notice in the face of a clear contractual obligation contained in a standard mortgage clause to provide written notice to a mortgagee.
We hold that actual notice of insurance cancellation via telephone is insufficient to cancel the mortgagee's interest when a standard mortgage clause contained in the contract of insurance unambiguously requires written notice to the mortgagee. We should not read oral cancellation privileges where none exist. In Standard Fire Insurance Co. v. United States, 407 F.2d 1295 (5th Cir. 1969), the court explained its reasons for requiring written notice to mortgagees:
In today's world of large financial institutions and government agencies, intelligent choices can be made by the entity to be charged with notice only when such notice is channeled to its responsible authorities. Written notice makes for documentary certainty as to time and content. Thus it is reasonable to charge mortgagees with having procedures by which they can properly funnel and act upon written notice. In contrast, the danger is great that oral notice would be given to minions of unascertained status in government agencies and corporate institutions, and would pass no further.
Id. at 1300. We agree with the court's reasoning and conclude that mortgagee security may not be "subjected to something so impermanent as the spoken word" when the clear contractual obligation of the insurer is to provide written notice. See id. The notice of cancellation provision in the standard mortgage clause is designed to secure and protect the mortgagee's interest.
Although the trial court granted Fidelity summary judgment based on First State's failure to provide written notice of cancellation, the record reflects a factual dispute as to this issue which must be resolved by the trial court. Fidelity, as Commonwealth's subrogee, will be entitled to attorney's fees should it ultimately prevail in this litigation. § 627.428, Fla. Stat. (1995); Roberts v. Carter, 350 So.2d 78, 79 (Fla.1977); Vermont *270 Mutual Ins. Co. v. Bolding, 381 So.2d 320, 323 (Fla. 5th DCA 1980). Accordingly, we quash the decision of the district court with directions to remand the cause to the trial court for proceedings consistent with this opinion.
It is so ordered.
KOGAN, C.J., and OVERTON, GRIMES, HARDING and WELLS, JJ., concur.
ANSTEAD, J., recused.
NOTES
[1] On February 11, 1988, Fern DiSario, the Commonwealth employee responsible for maintaining insurance coverage on the bank's mortgaged properties, was told by Fountainbleau's insurance agent in a telephone conversation that First State had cancelled coverage on the Fountainbleau in October 1987.