[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 26, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-11660

_____

D. C. Docket No. 03-00996-CV-T-23-MSS

KATHLEEN MILLER,
ROD MILLER,
husband of Kathleen Miller,

                                                        Plaintiffs-Appellants,

versus

SCOTTSDALE INSURANCE COMPANY,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 26, 2005)

Before EDMONDSON, Chief Judge, and TJOFLAT and KRAVITCH, Circuit
Judges.

PER CURIAM:

This diversity action presents an obscure but important question of Florida insurance law, namely, whether § 627.848, Fla. Stat. (2002), which governs insurance policy cancellations by premium finance companies, contemplates separate dates of cancellation for different insureds or requires a single cancellation date. In this case, Kathleen Miller and Rod Miller ("the Millers"), as assignees of the rights under an insurance policy, seek to enforce against Scottsdale Insurance Company ("Scottsdale") a judgment which they obtained against the Cuban Club Foundation, Inc. and Circulo Cubano, Inc. (collectively "the Cuban Club"). After cross motions for summary judgment, the district court granted summary judgment in favor of Scottsdale. The Millers filed a timely appeal to this Court. Because there is no controlling Florida authority on this question, we certify this issue to the Florida Supreme Court.

## I. Facts

Scottsdale issued a commercial property and general liability insurance policy to the Cuban Club for the period October 27, 2000 to October 27, 2001. The Cuban Club financed the premium through Premium Financing Specialists, Inc. ("PFS").[1]

---

[1] In a premium financing arrangement, the insurance company receives its entire premium up front from the premium finance company and the insured then repays the premium finance company in installments.

PFS and the Cuban Club entered into a standard premium finance agreement which included a power of attorney giving PFS authority to cancel the policy in the event of non-payment by the Cuban Club. The policy's "Building and Personal Property Coverage Form" contained a provision requiring Scottsdale, as the insurer, to provide Northside Bank of Tampa ("Northside"), as the mortgagee, with ten days' notice prior to cancellation of the policy. When the Cuban Club failed to make its December 2000 payment, PFS mailed a "notice of cancellation" which Scottsdale received on January 9, 2001. Scottsdale, however, did not give the required notice to Northside until January 22, 2001.

On January 13, 2001, Kathleen Miller was injured on the Cuban Club's property–four days after Scottsdale received the notice of cancellation, but nine days before Scottsdale provided the notice of cancellation to Northside. The Millers sued the Cuban Club in state court for damages arising from Kathleen Miller's injuries on the property. The Millers obtained a judgment against the Cuban Club in the amount of approximately $330,000. The Cuban Club assigned to the Millers all of its rights as named insured under its policy with Scottsdale. The Millers then filed the instant action against Scottsdale, alleging that the insurance policy provides coverage for the damages for which the Cuban Club is responsible. Scottsdale removed the case to federal court and contended that the

3

policy was not in effect at the time of Kathleen Miller's injury.

The central dispute between the parties is as follows. Scottsdale contends that it has no duty to pay the Millers for any portion of the judgment because the policy was cancelled as of January 9, 2001, the date on which Scottsdale received the notice of cancellation. Under this view, because the policy was not in effect on the date Miller was injured, Scottsdale would owe the Millers nothing.[2] By contrast, the Millers assert that Scottsdale's policy remained in effect as of the date of the injury because cancellation of the policy could not take effect prior to the expiration of the period required for notice to Northside, and Scottsdale did not give notice to Northside until after the date of the injury.[3]

In granting Scottsdale's motion for summary judgment, the district court determined that although the policy requires Scottsdale to provide written notice to Northside ten days before the effective date of cancellation, "this notice

---

[2] We note that Scottsdale argues that the Millers' position overlooks the fact that the only portion of the policy in which Northside has an interest is the property and building coverage, a coverage which Scottsdale contends is irrelevant to the Millers' claim for damages under the general liability portion of the policy. Specifically, Scottsdale points out that the policy's "Building and Personal Property Coverage Form" contains the notice requirement to Northside, but the policy's general liability coverage form does not contain any notice requirement to Northside.

[3] The Millers also argue that if § 627.848 contemplates separate dates of cancellation for different insureds, it would raise difficult and complex premium allocation issues because many types of insurance are not priced on a "per insured" basis. By contrast, Scottsdale urges that the Millers' position rewards an insured for failing to pay its premiums by extending coverage until such time as all third parties have received notice.

requirement exists for the exclusive benefit of Northside apart from any duty owed by Scottsdale to the Cuban Club [and therefore] Scottsdale's notice to Northside nine days after Kathleen Miller's January 13, 2001, accident fails to invalidate PFS's cancellation of the Cuban Club's insurance on January 9, 2001."[4]

## II. Discussion

We review a district court's grant of summary judgment de novo, "viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party." Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

It is undisputed that the policy was not cancelled as to Northside until after Kathleen Miller's injury. Because the policy remained in effect with respect to some insureds until after the date of injury, the question becomes whether § 627.848[5], which governs insurance policy cancellations by premium finance

---

[4] The district court acknowledged that there was no controlling Florida authority on the issue. Therefore, the district court relied on an Illinois appellate decision, Dunbar v. Nat'l Union Fire Ins. Co., 561 N.E.2d 450, 453 (Ill. App. Ct. 1990). In Dunbar, the court summarily dismissed the claim that a policy cancellation was ineffective because the insurance company had not notified third party lien holders, reasoning that "[t]his requirement is irrelevant to any duty owed to the insured plaintiff." 561 N.E.2d at 453.

[5] § 627.848 provides in part:

companies, contemplates separate dates of cancellation for different insureds or requires a single cancellation date.

Although there is no Florida case on all fours, several Florida decisions have interpreted § 627.848.[6] In <u>Southern Group Indem., Inc. v. Cullen</u>, 831 So. 2d 681

(1) When a premium finance agreement contains a power of attorney or other authority enabling the premium finance company to cancel any insurance contract listed in the agreement, the insurance contract shall not be cancelled unless cancellation is in accordance with the following provisions:

(a)1. Not less then 10 days' written notice shall be mailed to each insured shown on the premium finance agreement of the intent of the premium finance company to cancel her or his insurance contract unless the defaulted installment payment is received within 10 days.

\*\*\*

(c) Upon receipt of a copy of the cancellation notice by the insurer or insurers, the insurance contract shall be cancelled as of the date specified in the cancellation notice with the same force and effect as if the notice of cancellation had been submitted by the insured herself or himself, whether or not the premium finance company has complied with the notice requirement of this subsection, without requiring any further notice to the insured or the return of the insurance contract.

(d) All statutory, regulatory, and contractual restrictions providing that the insured may not cancel her or his insurance contract unless she or he or the insurer first satisfies such restrictions by giving a prescribed notice to a governmental agency, the insurance carrier, a mortgagee, an individual, or a person designated to receive such notice for such governmental agency, insurance carrier, or individual shall apply when cancellation is effected under the provisions of this section. The insurer, in accordance with such prescribed notice when it is required to give such notice in behalf of itself or the insured, shall give notice to such governmental agency, person, mortgagee, or individual; and it shall determine and calculate the effective date of cancellation from the day it receives the copy of the notice of cancellation from the premium finance company.

[6] In addition to the cases discussed herein, <u>Fidelity and Deposit Co. of Maryland v. First State Ins. Co.</u>, 677 So. 2d 266 (Fla. 1996) and <u>American Reliance Ins. Co. v. Martinez</u>, 683 So. 2d 575 (Fla. 3d Dist. Ct. App. 1996) are instructive. In <u>Fidelity</u>, the Florida Supreme Court reversed the district court's determination that a policy was effectively cancelled when the

6

(Fla. 4th Dist. Ct. App. 2002), the premium finance company sent a notice of cancellation to the insurer because the insured failed to make the first premium payment. 831 So. 2d at 682. The notice of cancellation purported to cancel the policy prior to the date on which the insurer received the notice of cancellation. Id. The policy, however, required that the premium finance company give the insurer advance written notice of the effective date of any policy cancellation. Id. The issue before the court was when the notice of cancellation became effective. Id. The court reasoned that § 627.848(1)(d) required that the policy's cancellation provision be enforced, meaning that the premium finance company had to comply with the advance notice requirement in the policy.[7] Id. at 682-83. Therefore, in the context of that case, Cullen held that § 627.848(1)(d) requires that policy restrictions on cancellation be satisfied before cancellation can be effective. Id. Cullen did not, however, involve multiple insureds or address whether § 627.848

mortgagee was given oral rather than written notice of a policy cancellation. The court relied on the then statutory equivalent of § 627.848(1)(d), holding that "[f]ailure to give the prescribed notice nullifies the attempted cancellation by the premium finance company." 677 So. 2d at 268. Unlike the case at bar, in Fidelity, the mortgagee who failed to receive the notice of cancellation was an injured plaintiff in the underlying suit. Thus, Fidelity did not address whether a failure to provide notice of cancellation to the mortgagee also means that the policy cannot be cancelled as to another named insured. In American Reliance Ins. Co., the court upheld a jury's verdict that an insured's efforts to cancel its own insurance policy were ineffective when the insurer had not provided the mortgagee and loss payee with proper notice of cancellation. 683 So. 2d at 575-76. Like Fidelity, this case is distinguishable from the case at bar because the mortgagee who failed to receive the notice of cancellation was an injured plaintiff in the underlying suit.

[7] Thus, a loss that occurred between the cancellation date provided in the notice and the date of receipt by the insurance company was covered.

7

contemplates a single policy cancellation date or instead permits multiple dates of cancellation for different insureds.

Another instructive case is Alfred v. Security Nat'l Ins. Co., 766 So. 2d 449 (Fla. 4th Dist. Ct. App. 2000). There, the insurer Security National ("Security") issued a liability insurance policy to ATM Towing, Inc. ("ATM") effective June 29, 1993 through June 29, 1994. Id. at 450. ATM financed the policy through a premium finance company. Id. On September 7, 1993, the premium finance company cancelled the policy for non-payment of premiums. Id. Security did not, however, provide the required notice of cancellation to the Broward County Consumer Affairs Division ("CAD"). Id. at 450-51. On November 23, 1993, the plaintiff Alfred sustained injuries from an automobile collision with a vehicle driven by an ATM employee. Id. at 450. Security denied coverage, claiming that the policy was cancelled as of September 7, 1993. Id. Relying on the then statutory equivalent of § 627.848(1)(d), the Fla. Dist. Ct. of Appeal held that if [8] Security was required to give notice to CAD, and had failed to do so, the cancellation was ineffective. Id. at 451. Alfred is factually analogous to the case at bar in that it addressed whether cancellation of a policy can occur when a third party notice requirement is not satisfied. However, unlike the case at bar, the third

_____

[8] The court could not make this determination because the insurance policy filed with the court was incomplete. Id. at 452.

8

party in <u>Alfred</u> was a governmental entity rather than a mortgagee. Therefore, one could argue that the third party notice requirement in <u>Alfred</u> was for the purpose of protecting the general public from uninsured truck operators, and the injured plaintiff, as a member of the general public, was an intended beneficiary of the third party notice requirement.

Rather than predict how this question of Florida law should be decided, we certify the issue to the Florida Supreme Court for a definitive statement.

### III. Question Certified

We respectfully certify to the Florida Supreme Court the following question:

Whether § 627.848, Fla. Stat. (2002) contemplates a single date of cancellation for the insurance contract as a whole or whether the contract can be cancelled as to different insureds at different times depending on when a statutorily required notice is given to that insured?

Our phrasing of the certified question is merely suggestive and does not in any way restrict the scope of the inquiry by the Supreme Court of Florida. As we previously noted:

> [T]he particular phrasing used in the certified question is not to
> restrict the Supreme Court's consideration of the problems involved
> and the issues as the Supreme Court perceives them to be in its
> analysis of the record certified in this case. This latitude extends to
> the Supreme Court's restatement of the issue or issues and the manner
> in which the answers are given, whether as a comprehensive whole or

9

in subordinate or even contingent parts.

Swire Pacific Holdings v. Zurich Ins. Co., 284 F.3d 1228, 1234 (11th Cir. 2002)

(quoting Martinez v. Rodriguez, 394 F.2d 156, 159 n.6 (5th Cir. 1968)).

The entire record in this case and the briefs of the parties are transmitted

herewith.

**QUESTION CERTIFIED.**