932 So.2d 1028 (2006)
Kathleen MILLER, et vir., Appellants,
v.
SCOTTSDALE INSURANCE COMPANY, Appellee.
No. SC05-936.
Supreme Court of Florida.
May 18, 2006.
Charles P. Schropp and Amy S. Farrior of Schropp, Buell and Elligett, P.A., Harry Vance Smith of Smith, Clark, Delesie, Bierly, *1029 Mueller and Kadyk, Tampa, FL, for Appellant.
Anthony J. Russo of Butler, Pappas, Weihmuller, Katz, and Craig, LLP, Tampa, FL, for Appellee.
ANSTEAD, J.
We have for review a question of Florida law certified by the Eleventh Circuit Court of Appeals that is determinative of a cause pending in that court and for which there appears to be no controlling precedent. See Miller v. Scottsdale Ins. Co., 410 F.3d 678 (11th Cir.2005). The Eleventh Circuit certified the following question:
WHETHER § 627.848, FLA. STAT. (2002), CONTEMPLATES A SINGLE DATE OF CANCELLATION FOR THE INSURANCE CONTRACT AS A WHOLE OR WHETHER THE CONTRACT CAN BE CANCELLED AS TO DIFFERENT INSUREDS AT DIFFERENT TIMES DEPENDING ON WHEN A STATUTORILY REQUIRED NOTICE IS GIVEN TO THAT INSURED?
Id. at 681-82. We have jurisdiction. See art. V, § 3(b)(6), Fla. Const. For the reasons explained below, we hold that section 627.848, Florida Statutes (2002), provides for a single date of cancellation.

FACTS AND PROCEDURAL HISTORY
Scottsdale Insurance Company ("Scottsdale") issued a commercial property and general liability insurance policy to its insured, the Cuban Club, for the period of October 27, 2000, to October 27, 2001. This policy included a "Building and Personal Property Coverage Form," which contained a provision requiring Scottsdale, as the insurer, to provide Northside Bank of Tampa ("Northside"), as a mortgagee of the Cuban Club property, with ten days' notice prior to any cancellation by Scottsdale of the policy.[1] In order to finance the cost of Scottsdale's policy, the Cuban Club entered into a premium financing arrangement with Premium Financing Specialists, Inc. ("PFS"), whereby PFS would initially pay the insurance premium and, in turn, the Cuban Club would make payments to PFS. The premium finance agreement included a power of attorney authorizing PFS to cancel the Scottsdale policy in the event of the Cuban Club's failure to make its required payments to PFS. When the Cuban Club failed to make its December 2000 payment to PFS, PFS mailed a notice of cancellation to Scottsdale on December 28, 2000. Scottsdale received the notice on January 9, 2001. In accordance with the policy provision requiring notice of any cancellation to the mortgagee, Scottsdale provided notice to Northside of the policy's cancellation on January 22, 2001.
Prior to the notice to Northside, on January 13, 2001, Kathleen Miller was injured on the Cuban Club's property. Kathleen and Rod Miller ("the Millers") sued the Cuban Club for damages arising from Kathleen Miller's injuries, and obtained a judgment against the Cuban Club for approximately $330,000. The Cuban Club assigned to the Millers all of its rights as the named insured under its policy with Scottsdale. The Millers then filed suit against Scottsdale, alleging that the insurance *1030 policy provided coverage for the Millers' judgment against the Cuban Club. Scottsdale removed the case from state court to federal court and asserted that the policy had been canceled on January 9, 2001, prior to Kathleen Miller's injury. In response, the Millers argued that the policy remained in effect and that cancellation could not have taken effect prior to the expiration of the period required for notice to the mortgagee, Northside.
The federal district court agreed with Scottsdale and granted Scottsdale's motion for summary judgment. In its order, the district court concluded that although the policy expressly requires Scottsdale to provide written notice to Northside ten days before the effective date of cancellation, the "notice requirement exists for the exclusive benefit of Northside" and it "fails to invalidate PFS's cancellation of the Cuban Club's insurance on January 9, 2001." Miller v. Scottsdale Ins. Co., No. 8:03-cv-996-T-23MSS (M.D. Fla. order filed Mar. 4, 2004) (hereinafter cited as "Order"). The district court also recognized that this case involved an unsettled issue of Florida law, and in its order suggested certification of the question to this Court in the event of an appeal. Order at 4 n. 2.[2] The Millers appealed the federal district court's decision to the Eleventh Circuit Court of Appeals, and the Eleventh Circuit subsequently issued an opinion in Miller v. Scottsdale Ins. Co., 410 F.3d 678 (11th Cir.2005), certifying the statutory cancellation issue to this Court.

ANALYSIS
This Court has repeatedly stated that "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning . . . the statute must be given its plain and obvious meaning." Fla. Dep't of Revenue v. New Sea Escape Cruises, Ltd., 894 So.2d 954, 960 (Fla.2005) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)). Further, we are "without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power." McLaughlin v. State, 721 So.2d 1170, 1172 (Fla.1998) (quoting Holly v. Auld, 450 So.2d 217, 219 (Fla.1984)).
The relevant statute cited in the certified question, section 627.848, Florida Statutes (2002), provides:
627.848 Cancellation of insurance contract upon default. 
(1) When a premium finance agreement contains a power of attorney or other authority enabling the premium finance company to cancel any insurance contract listed in the agreement, the insurance contract shall not be canceled unless cancellation is in accordance with the following provisions:

(a)1. Not less than 10 days' written notice shall be mailed to each insured shown on the premium finance agreement of the intent of the premium finance company to cancel her or his insurance *1031 contract unless the defaulted installment payment is received within 10 days.
2. After expiration of such period, the premium finance company shall mail to the insurer a request for cancellation, specifying the effective date of cancellation and the unpaid premium balance due under the finance contract, and shall mail a copy thereof to the insured at her or his last known address as shown on the premium finance agreement.
(b) Every notice of cancellation shall include, in type or print of which its face shall not be smaller than 12 points, a statement that, if the insurance contract or contracts provide motor vehicle liability insurance required by the financial responsibility law, proof of financial responsibility is required to be maintained continuously for a period of 3 years, pursuant to chapter 324, and the operation of a vehicle without such financial responsibility is unlawful.
(c) Upon receipt of a copy of the cancellation notice by the insurer or insurers, the insurance contract shall be canceled as of the date specified in the cancellation notice with the same force and effect as if the notice of cancellation had been submitted by the insured herself or himself, whether or not the premium finance company has complied with the notice requirement of this subsection, without requiring any further notice to the insured or the return of the insurance contract.
(d) All statutory, regulatory, and contractual restrictions providing that the insured may not cancel her or his insurance contract unless she or he or the insurer first satisfies such restrictions by giving a prescribed notice to a governmental agency, the insurance carrier, a mortgagee, an individual, or a person designated to receive such notice for such governmental agency, insurance carrier, or individual shall apply when cancellation is effected under the provisions of this section. The insurer, in accordance with such prescribed notice when it is required to give such notice in behalf of itself or the insured, shall give notice to such governmental agency, person, mortgagee, or individual; and it shall determine and calculate the effective date of cancellation from the day it receives the copy of the notice of cancellation from the premium finance company.

(e) Whenever an insurance contract is canceled in accordance with this section, the insurer shall promptly return the unpaid balance due under the finance contract, up to the gross amount available upon the cancellation of the policy, to the premium finance company and any remaining unearned premium to the agent or the insured, or both, for the benefit of the insured or insureds. The insurer shall notify the insured and the agent of the amount of unearned premium returned to the premium finance company and the amount of unearned commission held by the agent. The premium finance company within 15 days shall notify the insured and the agent of the amount of unearned premium. Within 15 days of receipt of notification from the premium finance company, the agent shall return such amount including any unearned commission to the insured or with the written approval of the insured apply such amount to the purchase of other insurance products regulated by the department. The department may adopt rules necessary to implement the provisions of this subsection.
(f) If an insurance contract is canceled by an insurer upon the receipt of a copy of the cancellation notice from a premium finance company, and if such *1032 premium finance company has failed to provide the notice required by this subsection, the insured shall have a cause of action against the premium finance company for damages caused by such failure to provide notice.
Id. (emphasis added).
When interpreting the plain language of section 627.848(1), we first consider the statement that "the insurance contract shall not be canceled unless cancellation is in accordance with the following provisions." We conclude that the plain meaning of this provision is that an insurance contract cannot be canceled until all of the statutory requirements of the statute are fulfilled. To be sure, the statute sets out express prerequisites that must be satisfied before there can be an effective cancellation. See § 627.848(1)(a)(d). For example, each insured on the premium finance agreement must be given at least ten days written notice by mail of the intent of the premium finance company to cancel the insurance contract unless the unpaid installment payment is received within ten days. § 627.848(1)(a)(1). Additionally, if the contract requires the insurer to give notice to a third party, such as a mortgagee, the insurer must do so before there can be an effective cancellation, and the insurance company "shall determine and calculate the effective date of cancellation from the day it receives the copy of the notice of cancellation from the premium finance company." § 627.848(1)(d). Further, as the statute dictates, if there are no applicable statutory, regulatory, or contractual requirements for notice to be given to third parties, then the insurance contract shall be canceled as of the date specified in the cancellation notice upon receipt of the notice by the insured or insurers. § 627.848(1)(c). However, there is nothing in the statute that suggests that the insurance contract may be canceled as to different insureds at different times depending on when a statutorily required notice is given to that insured. Therefore, we conclude that the plain language of section 627.848, Florida Statutes (2002), requires a single date of cancellation for the insurance contract as a whole.[3]
Florida case law construing section 627.848 further supports this interpretation of the statutory scheme providing a single cancellation date. For example, in Fidelity & Deposit Co. of Maryland v. First State Insurance Co., 677 So.2d 266 (Fla.1996), we held that an insurance policy was not effectively canceled where the mortgagee had been given oral rather than the required written notice of cancellation. Id. at 269. The contract expressly provided that the mortgagee was to be given written notice of cancellation. Id. at 268. This Court relied on the then statutory equivalent of section 627.848(1)(d)[4] and concluded that the "[f]ailure to give the prescribed notice nullifies the attempted cancellation by the premium finance company." Id. We went on to state that "[b]ecause notice was required under the contract, *1033 notice was also required under the statute." Id.[5] Similarly, in American Reliance Insurance Co. v. Martinez, 683 So.2d 575 (Fla. 3d DCA 1996), the Third District upheld a jury's verdict that an insured's efforts to cancel its own insurance policy were ineffective when the insurer had not provided the mortgagee and loss payee with proper notice of cancellation. Id. at 575-76.[6]
In Southern Group Indemnity, Inc. v. Cullen, 831 So.2d 681 (Fla. 4th DCA 2002), the Fourth District addressed a situation in which a notice of cancellation by a premium finance company, acting as the attorney-in-fact for the insured, requested a cancellation date prior to the date on which the notice was received by the insurance company. Id. at 682. Although Cullen did not involve multiple insureds or address whether section 627.848 contemplates a single policy cancellation date, it is instructive. The court concluded that the policy was not canceled until the date the cancellation was actually received by the insurance company on the grounds that section 677.848(1)(d) served to incorporate all contractual restrictions on cancellation, including a provision requiring notice of cancellation to the insurer. Id. at 682. Specifically, the Fourth District explained that "under the statute the advance notice cancellation requirement contained in the policy applies to the premium finance company. The company could not, therefore, make cancellation effective prior to the insurer receiving notice of the cancellation." Id. As the Fourth District pointed out in its opinion, section 627.848(1)(d) requires contractual restrictions on cancellation to be satisfied before cancellation can be effective. Id.
In Alfred v. Security National Insurance Co., 766 So.2d 449 (Fla. 4th DCA 2000), the Fourth District reversed a summary judgment in favor of an insurer on a tow truck driver's policy that was alleged to have been canceled for nonpayment prior to an accident. Id. at 452. The premium finance company attempted to cancel the policy for nonpayment of premiums. Id. at 450. However, the insurer failed to comply with an ordinance requiring that thirty days' notice of the cancellation be given to the Broward County Consumer Affairs Division ("CAD"). Id. at 450-51. Relying on the then statutory equivalent of section 627.848(1)(d), the court held that if the insurer was required to give notice to CAD and had failed to do so, the cancellation was ineffective. Id. at 451.[7]

*1034 CONCLUSION
Florida courts that have construed section 627.848 have held that all statutory, regulatory, or contractual requirements for cancellation must be satisfied before a policy may be canceled.[8] In Fidelity, this Court concluded that the cancellation by the premium finance company was ineffective because the contract expressly provided that the mortgagee was to be given written notice of cancellation. In Cullen, the court found that section 627.848(1)(d) incorporated a contractual restriction requiring notice to the insurer, and that restriction prevented a cancellation date prior to the date on which the notice was received by the insurance company. In American Reliance, the court concluded that an insured's efforts to cancel its own insurance policy were ineffective when the insurer had not provided the mortgagee and loss payee with proper notice of cancellation. In Alfred, the court held that because the insurer failed to comply with an ordinance requiring that thirty days' notice of the cancellation be given to the Broward County Consumer Affairs Division, the cancellation was ineffective. We agree with the interpretations of Florida's statutory scheme for insurance cancellations set out in these decisions.
Accordingly, we answer the certified question by concluding that the plain language of section 627.848, Florida Statutes (2002), contemplates a single cancellation date for the insurance policy as a whole. Having responded to the certified question, we return this cause to the Eleventh Circuit.
It is so ordered.
PARIENTE, C.J., and WELLS, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] On page nine of the "Building and Personal Property Form," it states:

2. Mortgageholders
. . . .
f. If we cancel this policy, we will give written notice to the mortgageholder at least:
(1) 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or
(2) 30 days before the effective date of cancellation if we cancel for another other reason.
[2] In the district court's order, the judge granted Scottsdale's motion for summary judgment by concluding,

Policy 033's "BUILDING AND PERSONAL PROPERTY COVERAGE FORM" requires Scottsdale to provide written notice to Northside "10 days before the effective date of cancellation if we cancel for your non-payment of premium." However, because this notice requirement exists for the exclusive benefit of Northside apart from any duty owed by Scottsdale to the Cuban Club, Scottsdale's notice to Northside nine days after Kathleen Miller's January 13, 2001, accident fails to invalidate PFS's cancellation of the Cuban Club's insurance on January 9, 2001.
Order at 4 (footnote omitted).
[3] Scottsdale objects to one cancellation date for the entire policy because it argues that one cancellation date would allow the insureds to be "rewarded" by extending the cancellation date, even when the insureds have failed to pay the premium finance company. However, premium financing allows for the insurer to receive its entire premium at the inception of the policy. Therefore, the insurer will always receive the full premium it has earned even if policy cancellation is deferred until all requirements have been satisfied. See also Southern Group Indem., Inc. v. Cullen, 831 So.2d 681, 683 (Fla. 4th DCA 2002) ("Nor do we see any reason why the insurer should feel aggrieved by having to provide coverage, since the premium, which had been advanced by the finance company, was current.").
[4] § 627.848(5), Fla. Stat. (1987).
[5] In this case, the federal district court distinguished Fidelity by noting that the mortgagee who failed to receive the notice of cancellation in Fidelity was an injured plaintiff. Order at 4 n. 4. Moreover, the Eleventh Circuit noted that Fidelity did not address the issue of whether a failure to provide notice of cancellation to the mortgagee also means that the policy cannot be canceled as to another named insured. Miller, 410 F.3d at 681 n. 6. While it is true that Fidelity dealt with an injured mortgagee, it is also apparent that this Court in Fidelity declined to use two different cancellation dates (i.e. one date applicable to the mortgagee and one date applicable to the insured) in resolving the dispute.
[6] The federal district court distinguished American Reliance from the instant case by noting that the mortgagee who failed to receive the notice of cancellation was an injured plaintiff in American Reliance. Order at 4 n. 4. However, as was the case in Fidelity, the court also did not find different cancellation dates for different insureds.
[7] The federal district court distinguished Alfred from the instant case by noting that the required notice in Alfred was to be given to a governmental entity and "existed to protect the general public from uninsured tow truck operators." Order at 4 n. 4. Although the notice to a governmental agency is different from contractually required notice to a mortgagee, both are covered under section 627.848(1)(d) ("The insurer ... shall give notice to such governmental agency, person, mortgagee, or individual....").
[8] Courts in other jurisdictions have come to different conclusions as to whether the failure to notify the mortgagee affects an otherwise valid cancellation between the insurer and the insured. See State Farm Fire & Cas. Co. v. Stockton, 295 Ark. 560, 750 S.W.2d 945, 947 (1988) (finding that the cancellation of an automobile liability policy by insurer, which gave notice to insured but not to bank holding a lien on an automobile, was ineffective under the state statute); Nat'l Sec. Fire & Cas. Co. v. Mid-State Homes, Inc., 370 So.2d 1351, 1354 (Miss.1979) (concluding that the statutory requirement of notice to the mortgagee has the effect of making an independent contract between the insurer and mortgagee); Szymczak v. Midwest Premium Fin. Co., 19 Ohio App.3d 173, 483 N.E.2d 851, 859 (1984) ("Statutory notice to a mortgagee is mandated to protect the interest of the mortgagee in the subject property and not to protect the insured."); Wisniewski v. State Farm Gen. Ins. Co., 25 Wash.App. 766, 609 P.2d 456, 458 (1980) (holding that when statutory cancellation notice was given to the insureds, the cancellation was effective to the insureds, regardless of whether there was ineffective cancellation as to the lien holder);