335 So.2d 18 (1976)
UNITED STATES FIDELITY AND GUARANTY COMPANY, a Maryland Corporation, Appellant,
v.
NORTH AMERICAN STEEL CORPORATION, a Florida Corporation, Appellee.
No. 74-1436.
District Court of Appeal of Florida, Second District.
July 7, 1976.
*19 Monroe E. McDonald of Sanders, McEwan, Mims & McDonald, Orlando, for appellant.
Kingswood Sprott, Jr., Lakeland, for appellee.
PER CURIAM.
We have for review a final judgment rendered for the appellee, North American Steel Corporation (NASCO), against the appellant, United States Fidelity and Guaranty Company (USF&G), on a performance bond.
USF&G executed a performance bond in which Lurgi-Knost, Inc. was principal and USF&G was surety. Homer Knost Construction Company, Inc. entered into a contract with the Orlando Utilities Commission to construct a certain plant owned by the Commission. The Commission was created by a special act of the legislature which defined it as being a part of the government of the City of Orlando. Homer Knost Construction Company was in the process of liquidation and dissolution and their contract with the Commission was assigned to Lurgi. Lurgi became insolvent, went into bankruptcy and failed to complete its contract with the Commission.
The performance bond provided that if Lurgi:
"[S]hall fail to pay all just claims and demands by, or in behalf of, any employee *20 or other person, or any firm, association, or corporation, for labor performed or materials, supplies, or equipment furnished, used, or consumed by the Assignee-Contractor or its sub-contractors in the performance of the work, then the surety will pay the full value of all such claims or demands in any total amount not exceeding the amount of this obligation, together with interest as provided by law."
NASCO contracted with Lurgi to furnish, fabricate and deliver certain steel piping systems for the construction project of the Commission.
NASCO filed its complaint for damages against USF&G on the performance bond alleging that it had fulfilled its contract with Lurgi and certain sums due under the contract remained unpaid and Lurgi had failed and refused to pay the balance due.
USF&G filed a motion to dismiss, motion for more definite statement or compulsory amendment, and motion for change of venue. The motion to dismiss was based, among other things, on the fact that the complaint on its face showed that the contract for which the performance bond was posted was for the construction of a public building and that the action was barred by the one-year limitation set forth in § 255.05, Fla. Stat.
The trial court specifically held that the bond was not a statutory bond under the statute but was a common law bond. This holding was based on the decision in United Bonding Insurance Company v. City of Holly Hill, Fla.App.1st 1971, 249 So.2d 720. We affirm the trial court in its decision on this question and the denial of the motion.
The motion for more definite statement or compulsory amendment and the motion for change of venue were also denied by the trial court and we affirm the trial court in its denial of those motions.
After final hearing the trial court entered the final judgment appealed, holding that it was without dispute that all of the fabricated pipe furnished by NASCO was eventually accepted and installed in the project. The trial court further held that with the exception of one shipment, 93% of the purchase order (contract) had been filled and delivered to the project at least 30 days prior to any rejection by Lurgi and entered final judgment for NASCO in the sum of $55,838.93.
USF&G had filed an answer and counterclaim alleging that the pipe fabricated by NASCO under the contract was defective, inadequate and unacceptable in that the fabricated pipe furnished by NASCO had defective welds. Many of the defects were said to be latent as they could not be discovered except upon X ray. USF&G contended that it spent large sums of money in correcting the defective piping. To the extent of any payments properly made by USF&G to correct defects in NASCO's piping, USF&G is subrogated to the rights and remedies of its principal, Lurgi.[1] The fact that Lurgi went into bankruptcy does not preclude USF&G from asserting its subrogated rights and remedies of Lurgi under the contract, as the trustee in bankruptcy rejected any rights under Lurgi's contract with the Commission.[2]
The contract between NASCO and Lurgi provided that the piping systems fabricated by NASCO would be in complete accordance with the plans and specifications as prepared by Black & Veatch, the consulting engineers for the Commission. There was substantial evidence that the fabricated piping systems were not in accordance *21 with the plans and specifications prepared by Black & Veatch. Paragraph 7 of the contract provided:
"All materials supplied on this order shall be subject to Purchasers Inspection at any reasonable time before or during manufacture and within 30 days after delivery to Destination. Materials other than those specified shall not be supplied without Purchaser's approval. Rejected materials will be returned at Vendor's Expense, including all transportation charges paid by Purchaser."
The contract provided under paragraph 8 that:
"Vendor guarantees the workmanship and material entering into the items supplied on this order and agrees to replace or repair, without cost to Purchaser, any item on which defective workmanship or materials is found, provided claim is made within one year from Date of Shipment."
Approximately a week prior to trial and subsequent to pretrial conference, NASCO took the position that the Uniform Commercial Code was applicable in that Lurgi was obligated to inspect and accept or reject the work of NASCO within 30 days and that Lurgi, by not having rejected the pipe within 30 days, made the surety absolutely obligated to pay NASCO for the pipe irrespective of any defects in the pipe or any breach of warranty as to the workmanship in fabricating the pipe: e.g., defective welds.
We cannot determine from the final judgment or the record on appeal whether or not the trial court applied the UCC or paragraph 7 of the contract quoted above. In either event, the trial court specifically held that the failure of Lurgi to reject the pipe within 30 days from delivery made it liable for the 93% of the pipe delivered.
NASCO contends that the fabricated pipes are goods defined in Fla.Stat § 672.105 and that under Fla. Stat. § 672.606(1)(b) Lurgi failed to make an effective rejection of the goods within a reasonable time after it had an opportunity to inspect them. Referring to Fla. Stat. § 671.204, NASCO suggests that the 30-day period specified in paragraph 7 constituted a reasonable time which was "fixed by agreement" of the parties. Since the predominate nature of the transaction was the furnishing of a product rather than services, we believe that the fabricated pipe could properly be characterized as goods within the meaning of Fla. Stat. § 672.105. Nevertheless, even if it be conceded that the 30-day period was the specified reasonable length of time to reject the goods under Fla. Stat. § 672.606(1)(b), Lurgi's failure to do so did not leave it without a defense against NASCO's claim.
The pertinent statutes read as follows:
"672.606 What constitutes acceptance of goods

(1) Acceptance of goods occurs when the buyer:
* * * * * *
(b) Fails to make an effective rejection (§ 672.602(1)), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or ...
"672.607 Effect of acceptance; notice of breach; burden of establishing breach after acceptance; notice of claim or litigation to person answerable over

* * * * * *
(3) Where a tender has been accepted:
(a) The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; and
* * * * * *
"672.714 Buyer's damages for breach in regard to accepted goods

*22 (1) Where the buyer has accepted goods and given notification (§ 672.607(3)) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.
(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
(3) In a proper case any incidental and consequential damages under the next section may also be recovered."
* * * * * *
"672.717 Deduction of damages from the price

The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract."
In discussing the right of rejection and the concomitant right of revocation of acceptance provided by Fla. Stat. § 672.608, White and Summers, Uniform Commercial Code § 8-1, states:
"At the outset one should understand the significance of a self-help remedy which permits the buyer to return the goods to the seller, (that is, rejection or revocation of acceptance). In such cases the buyer is freed from his obligation to pay the price, and he has a right to recover that part of the price he has already paid. Moreover, except in unusual circumstances, he need not undertake to resell the goods. One should understand the economic difference between the status of the buyer who has rejected and the status of the buyer who has accepted and sued for breach of warranty. The typical buyer who accepts and sues for breach of warranty under 2-714 will recover only for injury proximately resulting from defects in the goods at the time of sale ... On the other hand, if buyer rejects the goods, he is first recompensed for the injuries resulting from the seller's failure to perform his end of the contract ... more important, he escapes the bargain, and he throws any loss resulting from depreciation of the goods back upon the seller...."
Thus, it is evident that while the failure to reject goods may affect the amount of damages a buyer can recover, it does not preclude him from making a claim for breach of warranty. On this point White and Summers, Uniform Commercial Code, supra, states "absent an explicit contract term so providing, acceptance does not foreclose buyer's suit for breach of warranty." A contractual provision permitting the buyer to have thirty days within which to inspect and reject the delivery of materials cannot be construed to be such a term.
Following the acceptance of a tender under Fla. Stat. § 672.607(3)(a), the buyer is required to notify the seller of a breach within a reasonable time after he discovers or should have discovered it. However, Fla. Stat. § 671.204 provides that whenever the Code requires action within a reasonable time, any time which is not manifestly unreasonable may be fixed by agreement. In the contract NASCO guaranteed the workmanship and material on any defective items provided claim was made within one year from the date of shipment. Thus, the parties themselves determined the length of time within which Lurgi would have to "notify the seller of breach." Since Lurgi made its claims well within the one-year period, the court should have considered the question of whether the pipe was defective.
Therefore, we hold that the trial court erred in holding USF&G absolutely liable *23 for 93% of the purchase order by reason of Lurgi's failure to reject the pipe within 30 days from delivery. This cause is reversed and remanded for a new trial in which USF&G will be accorded all rights and remedies Lurgi had against NASCO under its contract, either by way of defenses or claims for damages.
HOBSON, Acting C.J., and GRIMES and SCHEB, JJ., concur.
NOTES
[1] Travelers Indemnity Company v. Evans Pipe Company, 6th Cir.1970, 432 F.2d 211, and St. Paul Fire & Marine Insurance Company v. United States, 5th Cir.1967, 370 F.2d 870.
[2] Stauduhar v. Limbach Company, 308 F. Supp. 696 (1970).