## MESSINGER v FRIEDMAN

Case No. M-85-6743-S

County Court, Palm Beach County

October 17, 1985

### APPEARANCES OF COUNSEL

**Samuel Messinger,** pro se.

**Eric A. Peterson** for defendant.

### OPINION OF THE COURT

ROBERT M. GROSS, County Judge.

This case came before the Court for non-jury trial on October 2, 1985. The Court heard the sworn testimony of witnesses and received exhibits into evidence.

### *Findings of Fact*

By May, 1984, Plaintiff had been wearing dentures for some years. Because the dentures he had been using were cutting into his gums, Plaintiff went to see Defendant, who is a dentist. Upon examination, Defendant found that four roots in Plaintiff's lower gum were inflamed

and infected. Defendant treated his patient for this condition. In addition, Defendant agreed to prepare Plaintiff a new set of lower dentures. There were no specific discussions or negotiations concerning the result to be obtained from the preparation of the dentures. Based on Defendant's recommendation, Plaintiff agreed that this new set should attempt to correct his protrusive underbite. Defendant indicated that his fee for the dentures would be $500.00. Plaintiff paid this amount.

During several visits, Defendant took measurements and impressions and conducted fittings necessary for the preparation of the dentures. Defendant then sent the molds to an outside lab where the dentures were made. After the dentures were completed, Plaintiff found them to be deficient in several respects. The dentures cut into his gums. A misalignment of the teeth made it uncomfortable for Plaintiff to chew. This misalignment most likely arose frm Defendant's attempt to treat Plaintiff's underbite. Defendant made adjustments to the dentures during a number of visits, but Plaintiff was never able to obtain satisfaction and comfort. Finally, Plaintiff indicated that he wanted a set of dentures re-creating the bite of his previous set, which Plaintiff had found comfortable. Defendant expressed his willingness to try again, but indicated that Plaintiff would have to pay an additional lab fee to cover a second attempt at making a lower plate. Plaintiff refused to pay any additional money. He went to another dentist, who made a lower partial plate to his satisfaction.

Defendant put on expert testimony that his $500.00 fee was reasonable and that the treatment he rendered to Plaintiff was in compliance with reasonable community dental standards. Defendant's expert had also treated Plaintiff, so he was familiar with Plaintiff's dental condition.

### Conclusions of Law

The essence of Plaintiff's case is that under the Uniform Commercial Code, Defendant breached an implied warranty by providing him with an unsatisfactory denture. The applicability of the warranty provisions of the Code turn on whether Defendant's sale of dentures amounts to a "transaction in goods." § 672.102, Fla. Stat. (1983). If this sale of dentures is a transaction governed by the Code, then Defendant would be subject to the warranty provisions of Sections 672.313-672.315, Florida Statutes (1983).

A dentist's sale of dentures to a patient is a hybrid transaction, including elements of both a traditional sale and a service. Where the predominant nature of a transaction is the furnishing of a product

128

rather than services, Article 2 of the Code governs the sale. *See, United States Fidelity and Guaranty Co. v. North American Steel Corp.*, 335 S0.2d 18, 21 (Fla. 2nd DCA 1976); *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir. 1974); Annot., 5 A.L.R. 4th, 501, 505 (1981). On the other hand, where the predominant character of a transaction is the rendition of services, the Code is inapplicable. *Id.*

In the instant case, the underlying transaction primarily involved the rendition of professional dental services. Although Florida has no cases on point, other jurisdictions have not applied Article 2 to a dentist's sale of dentures. *Carroll v. Grabavoy*, 396 N.E.2d 836, 839 (Ill. App. 1979); *Preston v. Thompson*, 280 S.E. 2d 780, 784 (N.C. 1981); *see, Newmark v. Gimbel's Incorporated*, 258 A.2d 697, 702-03 (N.J. 1969). Defendant did not merely sell Plaintiff a prepackaged piece of merchandise. The parties' agreement contemplated an extended course of treatment, involving the making of diagnoses, the taking of measurements, and the adjusting of a final fit. Like medicine, dentistry is not an exact science. Dentistry involves the rendition of informed opinions based on the practitioner's observations and training. In terms of a "sales-service" approach, this is a case in which Defendant's services were the dominant factor of the contract.

As one commentator has noted, the "sales-service" analysis is a crude method of determining whether warranty liability should be applied to a given transaction. White and Summers, *Uniform Commercial Code*, (2nd ed. 1980) Section 9-6. The decision to impose warranty liability on a transaction hinges on both the nature of the parties' undertaking and its susceptibility to evaluation by traditional warranty criteria. With regard to dental or medical services, a patient's complaints often do not arise from problems with a good supplied during treatment, but from the quality of services rendered. In the commercial field, warranty analysis focuses on the nature of a given product. The product is a tangible object subject to objective evaluation. Merchantability may be judged by comparison to similar products, usage in trade, price and governmental or industry standards. With tangible products, the quality of the creative or manufacturing process can be effectively judged by examining the resulting good.

On the other hand, medical or dental services are less amenable to result oriented analysis. The success or failure of a given course of treatment turns on many intangible, subjective factors. For example, in the instant case, the suitability of the dentures depended in large part on Plaintiff's tolerance to an adjusted bite. Where a patient's complaint is largely grounded on defects in dental services as opposed to a product supplied, the warranty standards of the commercial market-

**129**

place are not appropriate for the allocation of fault. Resort to a negligence standard admittedly makes it difficult for a plaintiff to prove his case against a dentist, especially in a small claims case. However, amelioration of this problem must come from new legislation or a change in policy enunciated by a higher court.

In this case, the problems Plaintiff experienced did not arise from a defect in the denture itself. There was no flaw in the materials used to prepare the plate. The denture did not crack. The teeth did not fall out. Plaintiff's difficulties resulted from the quality of Defendant's diagnosis and recommendations. Thus, although Plaintiff has made a strong case for Defendant's breach of an implied warranty, the law does not impose that commercial responsibility on a dentist in this transaction.

Plaintiff has not claimed the existence of an oral express warranty or other promise by Defendant to achieve a specific result. *See, Cirafici v. Goffen*, 407 N.E.2d 633 (Ill. App. 1980); *Burns v. Wannamaker*, 315 S.E.2d 179 (S.C. 1984); *Annot.* 11 A.L.R. 4th 748 (1982). It is therefore unnecessary for the Court to rule on Defendant's contention that such a contract is barred by the Statute of Frauds, Section 725.01, Florida Statutes (1983).

In the absence of a specific contractual duty to his patient, a dentist in treating a patient is only required to use a reasonable standard of care commensurate with that used in the community. *See, e.g., Argonaut Insurance Co. v. Peralta*, 358 So.2d 232, 233 (Fla. 3rd DCA 1978). Defendant presented expert testimony that his treatment of Plaintiff was in accordance with acceptable dental standards. Plaintiff was unable to rebut the testimony of Defendant's expert. It is therefore

ORDERED AND ADJUDGED that Plaintiff, SAMUEL MESSINGER take nothing by this action and that Defendant, NORMAN FRIEDMAN go hence without day.