910 So.2d 298 (2005)
RYAN INCORPORATED EASTERN, a Florida corporation; and Hartford Fire Insurance Company, a Connecticut corporation, Appellants,
v.
CONTINENTAL CASUALTY COMPANY, an Illinois corporation; and Lumbermens Mutual Casualty Company, an Illinois corporation, Appellees.
No. 2D04-896.
District Court of Appeal of Florida, Second District.
August 5, 2005.
Rehearing Denied September 15, 2005.
*299 Paul M. Woodson of Adorno & Yoss, Fort Lauderdale, for Appellant Ryan Incorporated Eastern.
Steven G. Schember, Ernest J. Marquart, and Francine L. Hewes of Shumaker, Loop & Kendrick, LLP, Tampa, for Appellant Hartford Fire Insurance Company.
William M. Martin and Kathryn L. Shanley of Peterson Bernard, Fort Lauderdale, for Appellee Continental Casualty Company.
Janelle K. Christensen of Tressler, Soderstrom, Maloney & Priess, Lincolnshire, Illinois; and Robert L. Donald of Law Offices of Robert L. Donald, Fort Myers, for Appellee Lumbermens Mutual Casualty Company.
WALLACE, Judge.
In this case we are called upon to interpret the provisions of two commercial general liability (CGL) policies of insurance. Ryan Incorporated Eastern, a Florida corporation (the Contractor) was insured under a CGL policy issued by Continental Casualty Company, an Illinois corporation (the Primary Insurer), and an excess coverage CGL policy issued by Lumbermens Mutual Casualty Company, an Illinois corporation (the Excess Insurer). The Contractor and its surety, Hartford Fire Insurance Company, a Connecticut corporation (the Surety), filed an action against the Primary Insurer and the Excess Insurer for a judgment declaring that the provisions of the two CGL policies required the Primary Insurer and the Excess Insurer to defend and indemnify the Contractor and the Surety for damages to a golf course constructed by the Contractor in Collier County. After the action was at issue, all of the parties moved for summary judgment. The circuit court denied the joint motion for summary judgment filed by the Contractor and the Surety and granted the motions filed by the Primary Insurer and the Excess Insurer. Subsequently, the circuit court entered a final summary judgment in favor of the Primary Insurer and the Excess Insurer, and the Contractor and the Surety appealed. We reverse the final summary judgment in favor of the Primary Insurer and the Excess Insurer and remand this case to the circuit court for further proceedings on the authority of J.S.U.B., Inc. v. United States Fire Insurance Co., 906 So.2d 303 (Fla. 2d DCA 2005).[1]
The insurers concede that J.S.U.B. controls the analysis of the policies' coverage provisions,[2] but they argue that J.S.U.B.'s analysis of an exception to an *300 exclusion is distinguishable on the facts. They correctly observe that the coverage allowed under the "products-completed operations hazard" exception to the "your work" exclusion in the policies does not apply to "[w]ork that has not yet been completed or abandoned." According to the insurers, the undisputed facts in this case demonstrate that the alleged damage to the golf course occurred before the Contractor had completed its work on the project. Therefore, unlike J.S.U.B., in which construction had been completed, the damage to the property in this case was not included in the "products-completed operations hazard," and coverage is excluded. See, e.g., McGowan v. State Farm Fire & Cas. Co., 100 P.3d 521, 526 (Colo. Ct.App.2004) (holding that there was no coverage under "products-completed operations hazard" in CGL policy where the owners alleged that the work was not completed when the damage occurred); Vintage Contracting, L.L.C. v. Dixie Bldg. Material Co., 858 So.2d 22, 29-30 (La.Ct. App.2003) (affirming summary judgment in favor of CGL insurer in part because there was no coverage under "products-completed operations hazard" where the work called for in the contract was not complete at the time the damage occurred).
We are unable to determine from our de novo review of the record that there is no genuine issue of material fact concerning whether the alleged damage to the golf course occurred before or after the Contractor had completed its work on the project. Therefore, the final summary judgment may not be upheld for the reason asserted by the Primary Insurer and the Excess Insurer. Accordingly, we reverse the final summary judgment, and we remand this case to the circuit court for further proceedings.
The Contractor and the Surety seek appellate attorney's fees under section 627.428, Florida Statutes (2000). The Primary Insurer and the Excess Insurer object to an award of fees to the Surety, citing Western World Insurance Co. v. Travelers Indemnity Co., 358 So.2d 602, 604 (Fla. 1st DCA 1978). They argue that the Surety is not entitled to an award of attorney's fees under the statute because it is neither a named insured nor a named beneficiary under the CGL policies. As the insurers see it, the declaratory judgment litigation involves a dispute between insurance carriers concerning who bears the responsibility for the repair and replacement of defective construction, not a first party action by an insured against an insurer.
We disagree. Where, as in this case, a surety properly makes payment to correct defective construction or to complete a construction project undertaken by its principal, the surety becomes subrogated to the rights and remedies of its principal.[3]See Argonaut Ins. Co. v. Commercial Standard Ins. Co., 380 So.2d 1066, 1068 (Fla. 2d DCA 1980); U.S. Fid. & Guar. Co. v. N. Am. Steel Corp., 335 So.2d 18, 20 (Fla. 2d DCA 1976). It follows that the Surety is subrogated to any rights which the Contractor may have against its CGL carriers. See Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co., 227 F.Supp.2d 1248, 1260 (M.D.Fla.2002). For *301 this reason, we conclude that the Surety stands in the shoes of the Contractor as a first party claimant under the CGL policies. See id. As a first party claimant standing in the shoes of the Contractor, the Surety is entitled to an award of fees under the statute. Moreover, the Contractor executed a general indemnity agreement in favor of the Surety, which required it to indemnify the Surety for its court costs and attorney's fees. Thus a denial of fees to the Surety would lead to the Contractor's responsibility to indemnify the Surety for payment of its fees without the possibility of reimbursement from the Primary Insurer and the Excess Insurer. Such a result would be contrary to the goals of section 627.428. See Ins. Co. of N. Am. v. Lexow, 602 So.2d 528, 531 (Fla.1992) ("[T]he purpose of section 627.428 . . . is to discourage the contesting of valid claims against insurance companies and to reimburse successful insureds for their attorney's fees when they are compelled to defend or sue to enforce their insurance contracts."). Besides, the opposing view exalts form over substance. The Surety could have achieved the same outcome by arranging for the Contractor's attorney to carry the ball in the litigation.
For these reasons, we grant the motion for appellate attorney's fees, conditioned upon the ultimate entry of judgment in favor of the Contractor and the Surety on remand. The circuit court shall also determine the amount of appellate attorney's fees. We certify that our holding that the Surety is entitled to an award of appellate attorney's fees against the Primary Insurer and the Excess Insurer is in direct conflict with the portion of the First District's decision in Western World that denies an award of appellate attorney's fees to a surety against a liability carrier under comparable facts.
Reversed and remanded; conflict certified.
VILLANTI, J., and GREEN, OLIVER L., Senior Judge, Concur.
NOTES
[1] We note that the circuit court did not have the benefit of this court's decision in J.S.U.B. when it made its ruling on the parties' motions for summary judgment.
[2] The liability coverage form in the policy issued by the Primary Insurer bears the designation "CG 00 01 07 98." The liability coverage form in the policy issued by the Excess Insurer bears the designation "CC 70 00 (Ed. 08 94)."
[3] One of the affidavits filed in support of the joint motion for summary judgment filed by the Contractor and the Surety stated that the Surety had paid approximately $4.7 million to settle the underlying litigation with the owner of the project in question. The insurers did not contradict this statement in their responses to the motion for summary judgment; they do not challenge its accuracy in their joint response to the motion for appellate attorney's fees.