974 So.2d 368 (2008)
CONTINENTAL CASUALTY COMPANY, etc., Petitioner,
v.
RYAN INCORPORATED EASTERN, etc., et al., Respondents.[1]
Lumbermens Mutual Casualty Company, Petitioner,
v.
Ryan Incorporated Eastern, etc., et al., Respondents.
Nos. SC05-1935, SC05-4816.
Supreme Court of Florida.
January 24, 2008.
*371 Jonathan L. Gaines of Karen L. Stetson, PA., Miami, FL, and William M. Martin of Peterson Bernard, Fort Lauderdale, FL, for Continental Casualty Company, Petitioner.
Patrick E. Maloney of Tressler, Soderstrom, Maloney, and Priess, LLP, Chicago, IL, and Robert L. Donald of the Law Office of Sherman and Donald, Fort *372 Myers, FL, for Lumbermens Mutual Casualty Company, Petitioner.
Steven G. Schember and Duane A. Daiker of Shumaker, Loop, and Kendrick, LLP, Tampa, FL, for Respondents.
PARIENTE, J.
This Court has for review Ryan Inc. Eastern v. Continental Casualty Co., 910 So.2d 298 (Fla. 2d DCA 2005), in which the Second District Court of Appeal certified conflict with Western World Insurance Co., Inc. v. Travelers Indemnity Co., 358 So.2d 602 (Fla. 1st DCA 1978). The conflict issue is whether a surety that pays money on behalf of its principal and is subrogated to any rights the principal has against its own insurer under principles of equitable subrogation is entitled to recover its attorney's fees under section 627.428, Florida Statutes (2006), for prevailing in a coverage dispute against the principal's insurer. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We conclude that a surety that has no written assignment from the insured and is not a named or omnibus insured or named beneficiary under the policy is not entitled to attorney's fees under section 627.428. Accordingly, we quash the Second District's decision in Continental, which granted a motion for fees by the surety, and approve the First District's decision in Western World, which denied a similar request for fees.

FACTS AND PROCEDURAL HISTORY
In November 2000, Ryan Incorporated Eastern (Ryan), as contractor, entered into a contract with 951 Land Holdings, Ltd. (951 Land Holdings), as owner of the property, to construct a golf course in Collier County. This contract required Ryan to obtain commercial general liability ("CGL") insurance. Ryan obtained two separate CGL policies. The primary insurance policy was issued by Continental Casualty Company (Continental) and the excess policy was issued by Lumbermens Mutual. Casualty Company (Lumbermens). In December 2000, Ryan, as the principal, and Hartford Fire Insurance Company (Hartford), as the surety, executed performance and payment bonds to 951 Land Holdings, which were subject to an August 1994 General Indemnity Agreement (GIA) between Ryan and Hartford.
After completion of the golf course, 951 Land Holdings sued Ryan and Hartford for damages resulting from contaminated grass supplied by Ryan's subcontractor. The case proceeded to mediation, after which Hartford paid approximately $4.7 Million in claims, fees and expenses to settle the dispute.[2] Subsequently, Ryan and Hartford instituted a declaratory judgment action against Continental and Lumbermens for failing to defend and indemnify Ryan and Hartford for the damages paid in the lawsuit brought by 951 Land Holdings. Ryan and Hartford filed a joint motion for summary judgment. Continental and Lumbermens each filed cross-motions for summary judgment. The trial court granted summary judgment in favor of Continental and Lumbermens, concluding that there was no insurance coverage under the CGL policies based on the faulty workmanship of the subcontractor. Ryan and Hartford appealed the decision on coverage and filed a motion for appellate attorney's fees under section 627.428.
On appeal, the Second District Court of Appeal reversed the final summary judgment in favor of Continental and Lumbermens *373 on the underlying coverage issue and "[remanded] this case to the circuit court for further proceedings on the authority of J.S.U.B., Inc. v. United States Fire Insurance Co., 906 So.2d 303 (Fla. 2d DCA 2005)." Continental, 910 So.2d at 299.[3] As to appellate attorney's fees, the court granted Ryan and Hartford's motion "conditioned upon the ultimate entry of judgment in favor of the Contractor and the Surety, on remand." Id. at 301. The Second District determined that when a surety such as Hartford makes payment for its principal, "the surety becomes subrogated to the rights and remedies of its principal." Id. at 300. Because of its payment, the Second District reasoned that the surety "stands in the shoes of the Contractor as a first party claimant under the CGL policies" and is equally entitled to an award of fees under section 627.428. Id. at 301.
The Second District further elaborated on public policy considerations. Specifically, the court explained that because the GIA between Ryan and Hartford required Ryan to reimburse Hartford for any fees associated with the enforcement of the bond, a denial of fees to Hartford would make Ryan liable for those fees with no possibility of reimbursement from the insurers. See id. Because this result would contradict the purpose of section 627.428 to discourage the contesting of valid claims by insurance companiesand would "exalt[] form over substance," as the principal could have carried the ball in the litigation and been entitled to the same fees, the court conditionally granted Hartford's motion. See id.
In reaching this decision, the Second District certified conflict with Western World. In Western World, the surety and its principal sued the liability insurer for its failure to defend the principal and sought reimbursement for the money the surety paid on the bond. See 358 So.2d at 603. Similar to the Second District in Continental, the First District held that when a surety pays a judgment for the principal, the surety may be indemnified from the principal and is subrogated to any rights the principal has against its insurance carrier. See id. at 604. However, on nearly identical facts, the First District concluded that the surety was not entitled to its appellate fees because it was neither a named insured nor named beneficiary under the liability policy. See id. We accepted jurisdiction to resolve this conflict.

ANALYSIS

A. Overview of Section 627.428
This case requires us to review section 627.428, Florida Statutes (2006).[4] Because this issue involves the interpretation of a statute, our review is de novo. Brass & Singer, P.A. v. United Auto. Ins. Co., 944 So.2d 252, 253 (Fla.2006). Section 627.428, a provision of the Florida Insurance Code, was originally enacted in 1959, see ch. 59-205, § 477, Laws of Fla., and has been the subject of extensive interpretation *374 by both Florida and federal courts. See, e.g., Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., 254 F.3d 987 (11th Cir.2001); Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 945 So.2d 1216 (Fla.2006); Brass & Singer, 944 So.2d at 253-54; David Boland, Inc. v. Trans Coastal Roofing Co., 851 So.2d 724 (Fla.2003); Roberts v. Carter, 350 So.2d 78 (Fla.1977). Although the section authorizes an award of attorney's fees, it does so only in a discrete set of circumstances. The statute provides in pertinent part that
[u]pon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
§ 627.428(1), Fla. Stat.
As with any case of statutory construction, we begin with the "actual language used in the statute." Borden v. East-European Ins. Co., 921 So.2d 587, 595 (Fla.2006). This is because legislative intent is determined primarily from the text. See Maggio v. Fla. Dept. of Labor & Employment Sec., 899 So.2d 1074, 1076-77 (Fla.2005). The plain language of section 627.428 provides for an award of attorney's fees to a "named or omnibus insured or the named beneficiary" who obtains a judgment or decree against an insurer. § 627.428, Fla. Stat. (emphasis supplied).
A "named insured" is one who is "designated as an insured" under the liability policy. Romero v. Progressive Southeastern Ins. Co., 629 So.2d 286, 288 (Fla. 3d DCA 1993). An "omnibus insured" is one who is covered by a provision in the policy but not specifically named or designated. See Industrial Fire & Cas. Ins. Co. v. Prygrocki, 422 So.2d 314, 315 (Fla.1982) (holding that a pedestrian was an omnibus insured under a liability policy providing coverage for medical and other expenses incurred as a result of bodily injuries sustained by "a pedestrian, through being struck by the insured motor vehicle"); State Farm, Fire & Cas. Co. v. Kambara, 667 So.2d 831, 831-32 (Fla. 4th DCA 1996) (holding that a resident was an omnibus insured under a landlord's liability policy that provided coverage for "bodily injury caused by an accident on your premises you own or rent"). Additionally, the rights of an "omnibus insured" flow "directly from his or her status under a clause of the insurance policy without regard to the issue of liability." Kambara, 667 So.2d at 833. A "named beneficiary" is one who is specifically designated as such in the policy. See Roberts, 350 So.2d at 79.
Hartford does not contend that it falls within the narrow statutory class of entities outlined in section 627.428. Rather, it argues that it is entitled to an award of fees by standing in the shoes of Ryan, the "named insured" under the CGL policies, as both an assignee and equitable subrogee. Thus, the issue we must resolve is whether a surety that itself does not fall within any statutory classification may nevertheless recover attorney's fees by virtue of its relationship to an insured.[5]

*375 B. Assignment versus Subrogation
A surety may obtain standing to sue its principal's liability insurer either through an assignment, under principles of subrogation, or both. Despite the express limitations in section 627.428 as to the class of designated entities entitled to recover attorney's fees, this Court has previously approved an award of attorney's fees in situations where policy coverage was obtained through an assignment from an insured. The assignment exception is derived from language in our decision in Roberts, where we rejected an award of attorney's fees in favor of a third-party beneficiary of an insurance contract. 350 So.2d at 79.
In Roberts, an insurer and its insured appealed a district court decision authorizing an award of attorney's fees to an injured party under section 627.428. Id. at 78. The injured party was neither an "insured [n]or the named beneficiary" under the policy, but was entitled to sue the insurer because of its status as a third-party beneficiary. See id. at 79.[6] Because the injured third party did not fall within the narrow class of entities authorized to recover fees under the statute, we reversed the district court's award. See Roberts, 350 So.2d at 79. In reaching this decision, we held that
an award of attorney's fees under Section 627.428(1) is available only to the contracting insured, the insured's estate, specifically named policy beneficiaries, and third parties who claim policy coverage by assignment from the insured.
Id. (footnotes omitted).
By using the phrase "contracting insured," we unintentionally created confusion as to whether an "insured" other than the "contracting insured" could recover its fees under the statute. See Prygrocki, 422 So.2d at 315-16. However, we clarified that the term "contracting insured" was not intended to revise the language of the provision, but rather to distinguish between those persons insured under an insurance contract and the third party claimant at issue in Roberts. See id. at 316. We reiterated that the unambiguous terms of the statute clearly applied to all insureds under an insurance policy. See id. Furthermore, the Legislature amended the statute in 1982 to include "any named or omnibus insured or the named beneficiary." Ch. 82-243, § 376, Laws of Fla.
Unfortunately, in another decision regarding the assignment exception we recognized in Roberts, this Court may have created confusion by using the words "assignee" and "subrogee" interchangeably. See Fid. & Deposit Co. v. First State Ins. Co., 677 So.2d 266, 267, 269 (Fla.1996). In First State, an entity received an assignment from the insured for the right to recover under the insured's insurance policy. However, we held that the assignee, as the insured's "subrogee, will be entitled to attorney's fees should it ultimately prevail in this litigation." Id. at 269. As cogently stated in 16 Lee R. Russ & *376 Thomas F. Segalla, Couch on Insurance 3d (2005),
[t]he distinction between rights arising by virtue of an assignment and by way of subrogation is frequently obscured by defining one in terms of the other, in a manner which makes it difficult to tell whether the usage was an intentional. recognition that the two theories are considered as equivalent or an unintentional usage in a context where the difference was unimportant.
Id. § 222:54 (footnotes omitted).
Although we agree that the terms can be interrelated and are often confused, assignment and subrogation remain distinct legal concepts. Thus, the question we must resolve is whether, for purposes of the attorney's fees statute, obtaining the right to sue the insurer via equitable subrogation is functionally equivalent to obtaining that right through an assignment. Because the rights acquired under an assignment differ from the rights acquired by virtue of subrogation, we decline to equate these two distinct principles.
An assignment has been defined as "a transfer or setting over of property, or of some right or interest therein, from one person to another." Black's Law Dictionary 128 (8th ed.2004) (quoting Alexander M. Burrill, A Treatise on the Law and Practice of Voluntary Assignments for the Benefit of Creditors § 1, at 1 (James Avery Webb ed., 6th ed. 1894)). Essentially, it is the "voluntary act of transferring an interest." DeCespedes v. Prudence Mut. Cas. Co., 193 So.2d 224, 227 (Fla. 3d DCA 1966); accord Fla. Power & Light Co. v. Road Rock, Inc., 920 So.2d 201, 204 (Fla. 4th DCA 2006); 3A Fla. Jur.2d Assignments § 1 (2007); 6 Am. Jur.2d Assignments § 1 (2007). Importantly, once transferred, the assignor no longer has a right to enforce the interest because the assignee has obtained all "rights to the thing assigned." Price v. RLI Ins. Co., 914 So.2d 1010, 1013-14 (Fla. 5th DCA 2005) (quoting Lauren Kyle Holdings, Inc. v. Heath-Peterson Constr. Corp., 864 So.2d 55, 58 (Fla. 5th DCA 2003)).
On the other hand, subrogation is a broader concept, involving "an act of law growing out of the relation of the parties to the original contract of insurance," 16 Russ & Segalla, supra, § 222:53, where one entity pays the debt or discharges the obligations of another. See 22 Eric Mills Holmes, Holmes' Appleman on Insurance 2d § 141.1[B] (2003). Two types of subrogation have been recognized-conventional and equitable. Conventional subrogation is created by an agreement between the parties whereby one party having no interest in the matter discharges the debt of another and is thus entitled to the "rights and remedies of the original creditor." Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 646 (Fla. 1999). Essentially, it, is an agreement "that the party paying the debt will be subrogated to the rights of the original creditor." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick, 742 So.2d 328, 332 (Fla. 3d DCA 1999), approved, 765 So.2d 36 (Fla.2000). Indeed, an assignment could be part of a conventional subrogation agreement.
Unlike conventional subrogation, which is created by an express agreement, equitable (sometimes referred to as legal) subrogation arises by operation of law. See DeCespedes, 193 So.2d at 227; 31A Fla. Jur.2d Insurance § 3295 (2002). Equitable subrogation has been defined as "the substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." Black's Law Dictionary 1467. *377 Basically, it is an equitable remedy created "by the legal consequences of the acts and relationships of the parties." Radio Station WQBA, 731 So.2d at 646. Accordingly, equitable subrogation, "the object of which is to prevent injustice," is governed by the principles of equity. Holmes, supra, § 141.1[C][1].
The Second District premised its award of attorney's fees on equitable subrogation, which is a remedy commonly associated with surety relationships. As we explained in Transamerica Insurance Co. v. Barnett Bank of Marion County, 540 So.2d 113, 116 (Fla.1989) (quoting Pearlman v. Reliance Ins. Co., 371 U.S. 132, 137, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962)), a surety "who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." In the context of a surety relationship, the key to equitable subrogation lies in the surety's right to indemnification. Because a surety who pays a judgment on behalf of its principal is entitled to indemnification by its principal, it has the right to be subrogated to any rights the principal has against its liability insurer if that judgment is covered by the principal's liability policy. See Western World, 358 So.2d at 604.
Although the surety may stand in the shoes of the principal, the principal does not lose its status as an insured under the policy. In fact, as is evident from Ryan's involvement in the underlying litigation in this case and the principal's involvement in the underlying coverage dispute in Western World, the insured principal retains its right to sue for insurance coverage. Because the principal retains its rights under the policy, which includes the statutory right to claim attorney's fees, the surety does not acquire the principal's status as one of the designated entities entitled to attorney's fees under the statute. This prevents the insurer from being subject to a claim for attorney's fees from both the principal (insured) and the surety (subrogee) when, as in this case, both litigate the same coverage issue. On the other hand, an assignment transfers all of the insured's rights to a claim under the policy, including its status as an insured under the policy. Thus, an assignee is entitled to an award of fees under section 627.428. See Roberts, 350 So.2d at 79.
We reaffirm our holding in' Roberts that only the named or omnibus insured, the insured's estate, specifically named beneficiaries under the policy, and other third parties who claim policy coverage through an assignment are entitled to an award of fees under section 627.428. See id. at 78-79. Hartford does not fall within the narrow class of entities identified in the statute. Thus, the only way Hartford can recover its fees in this declaratory judgment action is through a valid assignment from Ryan, the named insured under the CGL policies.

C. Alternative Grounds
Although not raised in the Second District, Hartford argues that it obtained a valid assignment of Ryan's rights under the CGL policies through the General Indemnity Agreement (GIA) entered into between Hartford and Ryan in 1994.[7] We have authority to consider alternative *378 grounds for affirming the decision below that were not raised by the parties. See Radio Station WQBA, 731 So.2d at 644. However, after examining the language of the 1994 GIA, we conclude that it does not constitute an assignment of the rights of the principal to sue its insurer for insurance coverage after the dispute arose.
Hartford also asserts that it is entitled to an award of fees under the statute based on an implied assignment, similar to the one we recognized under the unique circumstances in All Ways Reliable Building Maintenance, Inc. v. Moore, 261 So.2d 131 (Fla.1972). In that case, a house repair company brought suit against both the owner and the insurance company that covered the owner's house for fire damage. Id. at 131. The owner filed a cross-claim arguing that the insurer was responsible because the insurer's agent had preapproved All Ways' estimate for the repairs. Id. The trial court awarded judgments in favor of All Ways and the owner and approved an award of attorney's fees to both parties. Southern Am. Fire Ins. Co. v. All Ways Reliable Bldg. Maint., Inc., 251 So.2d 11, 13 (Fla. 4th DCA 1971).
In approving the trial court's award, this Court determined that a contract between All Ways and the insurance company arose by implication. All Ways, 261 So.2d at 132. This implied contract "logically included an assignment" of the owner's claim against the insurer. Id. We stated that
[u]nder such circumstances it is highly technical and unrealistic to take the view that [the statute] does not authorize an attorney's fee for All Ways Reliable. All Ways Reliable was found by implication of the related circumstances to be the assignee of the insured Elsie Moore's loss claim against the insurance company; and, having successfully sued the insurance company which denied the claim for the amount representing the fire loss, was entitled concomitantly to the attorney's fee.
Id. We held that, despite being neither a named insured nor a named beneficiary under the policy, All Ways was entitled to an award of its attorney's fees based on an implied assignment from the owner. Id.
The circumstances justifying the implied assignment in All Ways are distinguishable from the facts in this case. Hartford did not perform under the bond as a result of the insurers' determination that the damage was covered by the CGL policies. To the contrary, the insurers maintain that they disputed liability from the beginning, even before Hartford settled the underlying litigation. Moreover, Hartford had a duty to perform under the surety bond regardless of whether the CGL policies covered the damage. Hartford does not, and simply cannot, allege that it detrimentally relied, as the repair company did in All Ways, upon an approval from the insurers prior to performing under the bond. Therefore, there are no circumstances that would justify the existence of either an implied contract or implied assignment between the surety and insurers in this case. To the extent that our decision in All Ways appears to recognize an equitable basis for recovering attorney's fees under section 627.428, we limit that case to its unique facts.
Hartford lastly argues that "a denial of fees to the Surety would lead to the Contractor's responsibility to indemnify the Surety for payment of its fees without the possibility of reimbursement from the Primary Insurer and the Excess Insurer." Continental, 910 So.2d at 301. Essentially, the argument is that a denial of fees to Hartford would "exalt form over substance," because Ryan is liable for Hartford's fees regardless of the outcome of this appeal. Id. Continental and Lumbermens do not agree that the contractor, as *379 principal, would be liable under the GIA for the surety's attorney's fees in the underlying coverage dispute. We do not interpret the GIA, agreement. Even assuming that Hartford is correct, it is outside this Court's purview to correct a potential inequity by interpreting a statute contrary to its plain language.
Our conclusion does not rest on whether it is sound public policy to allow a surety to recover its attorney's fees from the insurer under these circumstances. If there is an injustice that requires the expansion of the statutory class of entities entitled to recover attorney's fees under section 627.428, that argument is one best addressed by the Legislature. See Parker v. Parker, 950 So.2d 388, 394 (Fla.2007); Dowell v. Gracewood Fruit Co., 559 So.2d 217, 218 (Fla.1990).

CONCLUSION
As we held in Roberts and again reaffirm today, section 627.428 authorizes an award of attorney's fees only to "the named or omnibus insured or named beneficiary" under an insurance policy and to other third parties who obtain coverage based on an assignment from an insured. Ryan, as the named insured under these policies, has always been entitled to its fees in prosecuting this declaratory judgment action against its insurers. However, absent an assignment, Hartford as a surety is not entitled to attorney's fees from the insurer under 627.428.
For the foregoing reasons, we quash the Second District's decision in Continental granting attorney's fees in favor of Hartford and approve the First District's decision in Western World denying fees to a surety that failed to obtain an assignment. This case is remanded for further proceedings not inconsistent with this opinion.
It is so ordered.
LEWIS, C.J., and QUINCE and BELL, JJ., concur.
WELLS, J., concurs in result only with an opinion.
ANSTEAD, J., concurs in part and dissents in part with an opinion.
CANTERO, J., recused.
WELLS, J., concurring in result only.
I concur with the decision of the majority to quash the decision of the Second District Court of Appeal in this case and to approve the decision of the First District Court of Appeal in Western World Insurance Co., Inc. v. Travelers Indemnity Co., 358 So.2d 602 (Fla. 1st DCA 1978). As the First District did, I would deny attorney fees under section 627.428 because Hartford Fire Insurance Company is not a named or omnibus insured or a beneficiary under the insurance policy.
ANSTEAD, J., concurring in part and dissenting in part.
I dissent from the majority's conclusion, and conclude that Hartford is entitled to attorney's fees. Since Hartford's claim on the policy is solely through. Ryan as an insured under the policy, it should not make a difference whether Hartford is called an assignee or a subrogee, or is claiming insurance benefits for the use and benefit of Ryan as Hartford is entitled to do as Ryan's surety. It makes no sense that Dartford would be entitled to press Ryan's rights to insurance coverage but would be denied attorney's fees after successfully doing so.
In granting Hartford's motion for attorney's fees under section 627.428, the Second District, in a concise and well-reasoned opinion by Judge Wallace, explained:

*380 Where, as in this case, a surety properly makes payment to correct defective construction or to complete a construction project undertaken by its principal, the surety becomes subrogated to the rights and remedies of its principal. It follows that the Surety is subrogated to any rights which the Contractor may have against its CGL carriers. For this reason, we conclude that the Surety stands in the shoes of the Contractor as a first party claimant under the CGL policies. As a first party claimant standing in the shoes of the Contractor, the Surety is entitled to an award of fees under the statute. Moreover, the Contractor executed a general indemnity agreement in favor of the Surety, which required it to indemnify the Surety for its court costs and attorney's fees. Thus a denial of fees to the Surety would lead to the Contractor's responsibility to indemnify the Surety for payment of its fees without the possibility of reimbursement from the Primary Insurer and the Excess Insurer. Such a result would be contrary to the goals of section 627.428. Besides, the opposing view exalts form over substance. The Surety could have achieved, the same outcome by arranging for the Contractor's attorney to carry the ball in the litigation.
Continental, 910 So.2d at 300-01 (footnote and citations omitted). Despite the fact that Hartford was neither a named or omnibus insured nor a named beneficiary under the CGL policies, the Second District concluded that Hartford, as a surety, was effectively and legally subrogated to the rights and remedies of Ryan, its principal, and therefore entitled to an award of attorney's fees under the statute. See id.
"Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right." Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 646 (Fla.1999) (quoting W. Am. Ins. Co. v. Yellow Cab Co., 495 So.2d 204, 206 (Fla. 5th DCA 1986)). Equitable subrogation, also referred to as legal subrogation, "is not created by a contract, but by the legal consequences of the acts and relationships of the parties." Dade County, 731 So.2d at 646. In general, equitable subrogation is appropriate where:
(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party.
Id. (citing Fowler v. Lee, 106 Fla. 712, 143 So. 613, 614 (1932)). The party who has discharged the debt "stands in the shoes" of the party whose claim has been discharged and therefore is entitled to the "right and priorities of the original creditor." Id.
Equitable subrogation is clearly applicable in the context of sureties. See, e.g., Transamerica Ins. Co. v. Barnett Bank of Marion County, 540 So.2d 113, 116 (Fla. 1989) ("[T]here are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed.") (quoting Pearlman v. Reliance Ins. Co., 371 U.S. 132, 137, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962)). When a surety performs or pays on behalf of its principal, it becomes "subrogated to the rights" of both its principal and its obligee. Argonaut Ins. Co. v. Commercial Standard Ins. Co., 380 So.2d 1066, 1068 (Fla. 2d DCA 1980); accord Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co., 227 F.Supp.2d 1248, 1259 (M.D.Fla.2002); Transamerica, 540 So.2d at 115-16; U.S. Fid. & Guar. Co. v. N. Am. Steel Corp., 335 So.2d 18, 20 (Fla. 2d DCA 1976). Although *381 limited to the "extent of performance or payment," the surety is "entitled to all the rights of the person [it] paid to enforce [its] right to be reimbursed." Transamerica, 540 So.2d at 116 (quoting Pearlman, 371 U.S. at 137, 83 S.Ct. 232). Hence, to the extent that a surety performs on behalf of its principal an obligation that is covered by the policies of a principal's liability insurers, the surety stands in the shoes of its principal and is subrogated to the rights of its principal under those policies. See Western World Ins. Co. v. Travelers Indem. Co., 358 So.2d 602, 604 (Fla. 1st DCA 1978); see also Auto Owners, 227 F.Supp.2d at 1260. Accordingly, a surety who performs its obligations under the surety contract is entitled to assert the rights and remedies available to the principal against an insurer in order to seek reimbursement for its outlays under the surety contract.
The majority contends that even if a surety is entitled to stand in the shoes of an insured, it does so in a limited fashion. Citing to Western World, the majority holds that a surety's right to subrogation is limited to the rights the principal is owed under the policy with respect to indemnification and nothing more. However, no one disputes that a principal is entitled to seek recovery from its insurer for damage that is allegedly covered by the policy, and, if the insurer fails to defend the principal, the principal is entitled to recover its attorney's fees because it was forced to sue the insurer to enforce its insurance contract. See § 627.428, Fla. Stat. Importantly, when a surety and a principal are forced to sue the principal's liability insurer seeking declaratory judgment that the damage paid by the surety is covered by the policies, the surety is not seeking any rights greater than is already owed to the principal under the policy and under the attorney's fees statute.
An award of "fees has generally been denied when other persons have litigated the issue of insurance coverage on their own behalf," such as in third party beneficiary cases. Roberts v. Carter, 350 So.2d 78, 79 (Fla.1977). Where a third-party is not named in the policy or otherwise standing in the shoes of an insured, courts have been reluctant to award attorney's fees. See Indus. Fire & Can. Ins. Co. v. Prygrocki, 422 So.2d 314, 316 (Fla.1982) (stating that "[t]hird-party claimants, as Roberts held, are not within the class of insureds" contemplated by the statute); Roberts, 350 So.2d at 79 (refusing to award attorney's fees to a third party beneficiary who was not named in the policy); see also Am. E. Dev. Corp. v. Everglades Marina, Inc., 608 F.2d 123 (5th Cir.1979) (refusing to grant attorney's fees to a third-party beneficiary who was not named in the policy); Essex Builders Group, Inc. v. Amerisure Ins. Co., 429 F.Supp.2d 1274, 1290-91 (M.D.Fla.2005) (refusing to grant attorney's fees to an excess insurer because the excess insurer had not expended any fees on behalf of an insured, which would have allowed it to stand in its shoes to recover under the statute).
However, in situations where a third party has obtained rights by "standing in the shoes" of an insured, the law in Florida has allowed a recovery of attorney's fees. See, e.g., All Ways Reliable Bldg. Maint., Inc. v. Moore, 261 So.2d 131 (Fla.1972) (allowing an assignee of an insured to recover its attorney's fees under the statute); see also Kivi v. Nationwide Mut. Ins. Co., 695 F.2d 1285, 1288-89 (11th Cir.1983) (allowing an assignee of an insured to recover its fees); Stuyvesant Ins. Co. v. Nardelli, 286 F.2d 600, 604 (5th Cir.1961) (approving an award of attorney's fees to an indemnitee under the statute); but see Western World, 358 So.2d at 604 (refusing to grant attorney's fees to a surety who was subrogated to the rights of its principal).
*382 Although this Court has yet to decide a case under the precise circumstances at issue here, it has interpreted section 627.428 in situations involving an insured's assignee. This Court has concluded that an award of attorney's fees is appropriate in favor of an insured's assignee who successfully sues an insurance company that contested a claim under the policy. See All Ways, 261 So.2d at 132. In All Ways, a house repairer brought suit against both the owner and the insurance company that covered the owner's house for fire damage. Id. at 131. The owner filed a cross-claim arguing that the insurer was responsible because the insurer's agent had preapproved All Ways' estimate for the repairs. Id. at 132. The trial court awarded judgments in favor of All Ways and the owner, and approved an award of attorney's fees to both parties. S. Am. Fire Ins. Co. v. All Ways Reliable Bldg. Maint., Inc., 251 So.2d 11, 13 (Fla. 4th DCA 1971), quashed sub nom. All Ways Reliable Bldg. Maint. v. Moore, 261 So.2d 131 (Fla.1972). In approving the trial court's award on review this Court determined that, although no express contract existed, a contract between All Ways and the insurance company arose by implication of the circumstances. All Ways, 261 So.2d at 132. This implied contract "logically included an assignment" of the owner's claim against the insurer. Id. Importantly, this Court found that

[u]nder such circumstances, it is highly technical and unrealistic to take the view that [the statute] does not authorize an attorney's fee for All Ways Reliable. All Ways Reliable was found by implication of the related circumstances to be the assignee of the insured Elsie Moore's loss claim against the insurance company; and, having successfully sued the insurance company which denied the claim for the amount representing the fire loss, was entitled concomitantly to the attorney's fee.
Id. (emphasis supplied). Despite being neither a named insured nor a named beneficiary under the policy, we held that All Ways was entitled to an award of its attorney's fees based on an implied assignment from the owner. Id. Because it had given such broad interpretations to the attorney's fees provision, this Court stated that "it would appear to follow Oat an assignee of an insurance claim stands to all intents and purposes in the shoes of the insured and logically should be entitled to an attorney's fee when he sues and recovers on the claim." Id.; accord Roberts, 350 So.2d at 79.
I acknowledge that while we have held that an assignee of an insured is clearly entitled to an award under section 627.428, this Court has yet to decide a case involving a subrogee of an insured. However, because assignees and subrogees are treated similarly in terms of the rights acquired from the insured, there is simply no reason for the disparate treatment of the attorney's fee provision in these virtually identical circumstances. In fact, the Court has previously approved an award of attorney's fees to an assignee of an insurance claim based on principles of subrogation. See Fid. & Deposit Co. of Md. v. First State Ins. Co., 677 So.2d 266, 269 (Fla.1996). As discussed in the majority opinion, Fidelity paid a claim on behalf of its insured and in return received an assignment from the insured to sue First State, another insurer that was ultimately responsible for the loss. Id. at 267. On appeal, this Court remanded to the trial court for further proceedings, but held that Fidelity, as the insured's "subrogee, will be entitled to attorney's fees if it ultimately prevails in this litigation." Id. at 269 (emphasis supplied). Although First State involved an assignment, this Court used the terms assignee and subrogee interchangeably. See id. *383 By conditionally approving an award of fees to Fidelity as a subrogee, the Court essentially treated assignees and subrogees similarly under section 627.428.
In Auto Owners, the United Statutes District Court for the Middle District of Florida addressed a surety's status when pursuing a claim against its principal's liability insurer. A commercial liability insurer brought a declaratory judgment action against a surety to determine whether damage to certain construction projects was covered under the policies. 227 F.Supp.2d at 1254. The court concluded that the surety, as an assignee and a subrogee, had standing as a first party claimant under the policy to pursue counterclaims against the insurance company. Id. at 1259-60. Specifically, the surety had performed on behalf of its principal, an insured under the CGL policy, and thus "[stood] in [the surety's] shoes[,] . . . [was] equitably subrogated to the rights of [the surety], and [was] considered a first party claimant on the CGL policies." Id. at 1260. Although the attorney's fees provision was not at issue in Auto Owners, it seems relatively clear that the court concluded that an insured's assignee obtains the same rights and is entitled to the same status as an insured's subrogee. Id. at 1259. Both entities can "stand in the shoes" of the insured to protect their interests, both entities have standing to sue the insured's liability insurer, and more importantly, both parties are entitled to receive all the rights an insured has against its insurance company. Id. at 1259-60.
Additionally, the decision in Western World supports the conclusion that a subrogee, like an assignee, is equally entitled to all of the rights of the subrogor. In Western World, a surety paid a judgment on behalf of its principal under the terms of a security bond. 358 So.2d at 603. Thereafter, the surety and its principal sought recovery from the principal's liability insurer for failing to defend in the underlying litigation. Id. The First District concluded the surety was entitled to indemnification from the principal and thus had "the right to be subrogated to any rights which [the principals] have against their insurance carrier." Id. at 604 (emphasis added). Although the court's refusal to grant attorney's fees to the surety is the basis for the certified conflict in this case, the First District correctly concluded that the surety is subrogated to any rights of the principal against its insurer. Id.
As previously mentioned, there is no apparent distinction between the types of rights afforded to the assignee of an insured versus the types of rights afforded to a subrogee. Compare All Ways, 261 So.2d at 132 (holding that a surety who was an assignee stood in the shoes of the insured to all intents and purposes and was therefore entitled to an award of attorney's fees) and First State, 677 So.2d at 269 (holding that an assignee of an insurance claim was entitled to an award of fees under the statute as the insured's subrogee) with Dade County, 731 So.2d at 647 (stating that a subrogee stood in the shoes of the person whose debt had been discharged and thereby acquired all rights as against the wrongdoer). Given that both assignees and subrogees are equally entitled to stand in the shoes of the insured, it would be "highly technical and unrealistic" not to award fees to a subrogee who successfully sues an insurance company that is ultimately responsible for the claim. All Ways, 261 So.2d at 132.
In the present case, Hartford, as surety, and Ryan, as principal, executed and delivered performance bonds to 951 Land Holdings, the owner of the property. After 951 Land Holdings brought suit against Ryan and Hartford for supplying contaminated grass to the project, Hartford, in its role *384 as surety, paid $4.7 million to settle the underlying litigation. Continental, 910 So.2d at 301. Thereafter, Hartford and Ryan filed a declaratory judgment action against Ryan's liability insurers seeking reimbursement because the damages satisfied by Hartford on behalf of Ryan were covered by the CGL policies. Once Hartford paid the settlement, as was required by the bond, it became subrogated to the rights of Ryan. See Dade County, 731 So.2d at 646; Transamerica, 540 So.2d at 115-16; see also Auto Owners, 227 F.Supp.2d at 1259; Western World, 358 So.2d at 604; Argonaut, 380 So.2d at 1068. Because the extent of payment is alleged to be an obligation covered by the CGL policies, Hartford is subrogated to all the rights Ryan may have against petitioners. See id. As previously discussed, these rights include an entitlement to attorney's fees under section 627.428.
In reaching its decision, the Second District concluded that a denial of fees to Hartford would "exalt form over substance" because Ryan is ultimately liable to Hartford for its fees based on the indemnity agreement. Contintental, 910 So.2d at 301. The court reasoned that the statute's purpose is to reimburse an insured when it is forced to sue its insurer on the policy and that a denial of fees to Hartford, where Ryan will ultimately be liable for those fees anyway, would be contrary to that purpose. Id. Petitioners argue that Hartford and Ryan are experienced entities that decided to pursue the claim in this fashion and thus the court erred in forcing petitioners to pay for Hartford's fees simply because Ryan had a contractual obligation to do the same. However, the Second District correctly concluded that if Ryan had decided to carry the ball in the litigation, Ryan unquestionably would be entitled to its fees upon receipt of a favorable judgment against the insurers. Moreover, the mere fact that Hartford and Ryan are both involved in this litigation, each with their own attorney, should not deter this Court from approving an award of fees to Hartford. Indeed, this Court in All Ways approved a similar award, allowing both the insured and the insured's implied assignee to recover under the statute because it would have been "highly technical and unrealistic" to reach any other result. 261 So.2d at 132. Therefore, this Court should conclude that Hartford stands in the shoes of Ryan as a first-party claimant under the CGL policies and, if successful in the action against petitioners, should be entitled to an award of attorney's fees under section 627.428.
NOTES
[1] These two consolidated cases arise out of the Second District Court of Appeal's decision in Ryan Inc. Eastern v. Continental Casualty Co., 910 So.2d 298 (Fla. 2d DCA 2005). However, because both Continental Casualty Company and Lumbermens Mutual Casualty Company separately sought review, this Court assigned individual case numbers to those appeals. Additionally, although Ryan Incorporated Eastern is listed in the case caption, it is not a party before this Court because Hartford Fire Insurance Company is the only entity that filed an answer in this appeal.
[2] At oral argument, Hartford stated that Ryan paid a portion of this settlement. However, the actual amount contributed is unknown because it is part of a confidential settlement agreement not contained in the record.
[3] On the substantive issue of liability coverage, the Second District noted that J.S.U.B. would govern the analysis of the policies' coverage provisions, but the court could not determine from its de novo review whether the damage occurred prior to the completion of the project. See Continental, 910 So.2d at 299-300. Accordingly, the court remanded to the trial court to determine when the damage occurred and then decide the case based upon J.S.U.B. Id. at 300. The Second District's decision in J.S.U.B. was approved by this Court on the underlying coverage issue. See U.S. Fire Ins. Co. v. J.S.U.B., Inc., No. SC05-1295, ___ So.2d ___, 2007 WL 4440232 (Fla. Dec. 20, 2007).
[4] The provisions of section 627.428 were originally codified at section 627.0127. However, they were moved in 1971.
[5] We reject the argument that Hartford is precluded from recovering attorney's fees because it can be classified as an insurer. This Court has previously awarded attorney's fees under section 627.428 to entities engaged in the business of insurance. For example, in Fidelity & Deposit Co. v. First State Insurance Co., 677 So.2d 266 (Fla.1996), a fire insurer disputed coverage for a fire-damaged property arguing that it had previously cancelled the policy. Id. at 267. The insured settled with its "errors and omissions" insurer and assigned its right to sue the fire insurer for coverage, Id. We held that the "errors and omissions" insurer, which had obtained an assignment from the insured, would be entitled to an award of attorney's fees if it was successful in the suit against the fire insurer. Id. at 269.
[6] At the time of our decision in Roberts, the provision authorized an award of fees to "an insured or the named beneficiary under a policy." § 627.428(1), Fla. Stat. (1975).
[7] The insurers argue that the "anti-assignment" clause in the CIA precludes an assignment, even subsequent to the loss. However, "it is a well-settled rule that [anti-assignment provisions do] not apply to an assignment after loss." West Fla. Grocery Co. v. Teutonia Fire Ins. Co., 74 Fla. 220, 77 So. 209, 210-11 (1917); accord Better Constr., Inc v. Nat'l Union Fire Ins. Co., 651 So.2d 141, 142 (Fla. 3d DCA 1995).